WILLIAM B. WILLSON, and ANNE, his Wife, and others *vs.* JULIA McH. TYSON, widow of RICHARD W. TYSON.

*Construction of Will—Income—Trustees' Commissions—Annuitant.*

R. W. T. having property in his own right, and a power of appointment or disposition by will in respect of certain property held in trust for him under the will of his father, died leaving a will. By the first clause of this will he gave to trustees, to hold during the life of his widow, all the property held by him in his own right, " in trust to permit my said wife to possess, use, occupy, and enjoy the same, and to receive the rents, issues and profits thereof for and during her natural life; and from and after her death, then to all my children and their descendants then living to be equally divided between them *per stirpes*, and not *per capita*." By the next clause he directed all the property over which he had the power of appointment under his father's will, to be paid over and delivered to the same trustees, upon the following trusts: " First, in case the estate and property hereinbefore devised and bequeathed to the same trustees for the benefit of my wife shall, at the time of my death, fail or be insufficient to yield and produce her the *clear yearly* revenue or sum of six thousand dollars, (which I desire to *ensure as a mininum income to her*,) then to set apart and hold *in like manner as aforesaid*, in trust for her use, enjoyment, and benefit, *such an amount of property as may be requisite* to make up the deficiency of revenue to said yearly sum of six thousand dollars for her during her natural life; and from and after her death, I will, devise, and bequeath the said amount so set apart as aforesaid, unto all my children and their descendants then living, to be equally divided between them *per stirpes* and not *per capita*. Secondly; after having made up such deficiency, or there being no such deficiency to be made up, to hold and invest the said estate or balance thereof, (as the case may be,) and apply the income thereof to properly supporting, maintaining, and educating my children, according to the views, wishes and directions of my wife aforesaid, to whom I give the fullest authority therein;" and he then directed how the property should be divided among his children. From

the year 1873 to 1881 the income from the entire property embraced in both said clauses of the will, except for the years 1875 and 1881, in which years there was a surplus, was insufficient to produce the requisite amount of clear minimum income intended for the widow. The aggregate amount of the deficiency during the same period, assuming that she was entitled to receive annually at least $6000, if the net income from the entire estate amounted to that much, was $7146.79. On appeal from an order of the Court below allowing the widow on account of said deficiency, a balance of cash income amounting to $3329.55, shown by an auditor's account to be in the hands of the trustees, it was HELD:

1st. That looking to the clear intention of the testator, which must control in the construction of the will, the minimum income for the widow must be secured to her, if the clear income of the estate be sufficient to produce that amount, during her life; and to fulfil the intention of the testator, the deficiency of one year must be made up by the application of the surplus of succeeding years.

2nd. That until this minimum amount, which the widow was entitled to receive, be made good to her, year by year during her life, the children who would take in remainder, had no interest in the estate.

3rd. That this income to the widow, by the terms of the will, was confined to the income from the estate during her life; as by the terms of the will the estate intact was to be turned over to the children immediately upon her death.

4th. That with respect, however, to future income, the Court was not to be understood as deciding that the trustees, after making good the existing deficiencies in the yearly income to the widow, would be required to withhold from the children of the testator the surplus income, if any, over and above the $6000, to supply any mere possible deficiency that might occur in future years in the income payable to the widow.

It is the general practice to charge the commissions to be allowed to trustees, in cases like the one at bar, upon the entire income that may be in their hands for distribution, and then distribute the net balance to the parties entitled according to the precedence of their rights or claims.

If a party be entitled to be paid a certain amount in full, and the fund for distribution be sufficient to make that payment, after deduction of commissions and other proper expenses, he is entitled to receive his claim without reduction or abatement, unless it

be under very special circumstances. Upon no other principle could an annuitant, or a party entitled to a specific sum as a charge upon the proceeds of property, ever get the measure of his claim in full.

APPEAL from the Circuit Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., STONE, MILLER, ROBINSON, IRVING, RITCHIE, and BRYAN, J.

*Henry J. Bowdoin,* and *Severn Teackle Wallis,* for the appellants.

*John N. Steele,* and *I. Nevett Steele,* for the appellee.

ALVEY, C. J., delivered the opinion of the Court.

The questions that we are called upon to decide in this case arise upon the construction of the will of the late Richard W. Tyson. The will was made in 1869, and the testator died in 1873. He left a widow, and a considerable family of children, several of the children being of tender age. The principal question raised is one in respect to the extent and nature of the provision made for the widow of the deceased.

It is clear upon the most casual reading of the will that a certain and ample provision for his widow for her life was a leading and controlling object in the mind of the testator. This is made manifest by the care which he has taken to provide the sources from which the income should arise, and the terms in which he has expressed his desire upon the subject. He had an estate in his own right, and he had a power of appointment or disposition by will in respect of certain property held in trust for him under the will of his father. All this he dedicated primarily to the

production of a certain income for the benefit of his widow during her life.

By the first clause of the will, after payment of debts, &c., he devised and bequeathed to trustees, to hold during the natural life of his widow, all the rest and residue of his estate, real, personal and mixed, of which he might die possessed, or in any manner entitled to; "in trust, to permit my said wife to possess, use, occupy and enjoy the same, and to receive the rents, issues and profits thereof, for and during her natural life; and from and after her death, then to all my children and their descendants then living, to be equally divided between them *per stirpes*, and not *per capita.*" The next clause of the will has reference to the power contained in his father's will; and by this clause he executed the power, and devised and directed, that at his death, the trustees under his father's will should forthwith pay over and deliver up the estate subject to the operation of the power, to the trustees named in his own will, to whom he devised and bequeathed the same, in trust, to and for the following uses, intents and purposes, that is to say; "First, in case the estate and property hereinbefore devised and bequeathed to the said trustees for the benefit of my wife shall, at the time of my death, fail or be insufficient to yield and produce her the *clear yearly* revenue or sum of six thousand dollars, (which I desire to *ensure as a minimum income to her*,) then to set apart and hold *in like manner as aforesaid*, in trust for her use, enjoyment and benefit, *such an amount of property as may be requisite* to make up the deficiency of revenue to said yearly sum of six thousand dollars for her during her natural life; and from and after her death, I will, devise and bequeath the said amount so set apart as aforesaid, unto all my children and their descendants then living, to be equally divided between them *per stirpes*, and not *per capita.* Secondly, *after having made up such deficiency*, or there being no such deficiency to be

made up, to hold and invest the said estate or balance thereof, (as the case may be,) and apply the income thereof to properly supporting, maintaining, and educating my children, according to the views, wishes and directions of my wife aforesaid, to whom I give the fullest authority therein;" and he then directs how the property shall be divided among his children.

The property embraced in the first clause of the will was, at the time of the death of the testator, and has ever since proven to be, wholly inadequate to produce the minimum income intended for the widow; and all the property together, as well that embraced by the first clause as that embraced by the second, has, in most of the years since the death of the testator, proved insufficient to produce the requisite amount of clear income to gratify the provision made for her. In this state of things, and in view of the uncertain and fluctuating nature of the income derivable from the property, there has been no particular portion of the estate acquired through the power in the will of the father of the testator, set apart as directed in the second clause of the will of the latter, to make up the deficiency of the income derivable from the property embraced in the first clause. All the property has been and is still held together by the trustees as a corpus to yield the income for the widow. And according to the auditor's account, founded upon the report of the trustees, and ratified by the Court below, there have been but two years from 1873 to 1881 inclusive, in which the income from the entire property exceeded the clear minimum income allowed to Mrs. Tyson by the will. In the year 1875 there was a surplus of $660.92, and in 1881, a surplus of $2419.04. The aggregate amount of deficiency, during the same period, in the income to which Mrs. Tyson is entitled under the will, assuming that she is entitled to receive annually at least $6000, if the net income from the entire estate amounts to that much, is shown to

be $7146.79. The account shows that the trustees have now in hand a balance of cash income, amounting to $3329.55; and the first and principal question is, whether Mrs. Tyson, the widow, is entitled to have this balance in hand applied to making up, as far as it will go, the deficiencies in her past income. And this depends largely upon the nature of the interest or estate that she takes under the will.

It may be very true, and indeed doubtless was the case, that the testator, at the time of making his will, or even at the time of his death, was under a false impression as to the amount of his property, and in regard to the amount of its future annual production. He evidently supposed that the estate at his disposal would enable him to provide a certain income for his wife, and that there would be a surplus for his children. But if we find from the terms of the will that his primary object was to secure a certain or minimum income to his widow, at all events and without restriction, the will must be construed with reference to that apparent intention.

Unlike many of the cases cited in argument, this is not the case of a gift of an annuity, in the strict sense and meaning of the term, charged upon the estate of the testator generally, or a particular portion of it, or the rents, profits, or dividends of the estate, and where the annuity will be decreed to be paid in full, though it may require the sale or conversion of the corpus of the estate, or the appropriation of the rents, profits, or dividends thereof, even beyond the life of the annuitant. Such were the cases cited of *May vs. Bennett*, 1 *Russ. Ch. Cas.*, 370; *Birch vs. Sherratt, L. R.*, 2 *Ch. App.*, 644; *Booth vs. Coulton, L. R.*, 5 *Ch. App.*, 684; *Gee vs. Mahood*, 11 *Ch. Div.*, 891, and same case affirmed on appeal, and reported as *Carmichael vs. Gee*, 5 *App. Cas.*, 588. In such cases as those the gift of the annuity is but a pecuniary legacy measured by the number of years that the annuitant may

live, multiplied by the amount of the annual sum to be paid; and the annuitant is entitled to have that sum made good, not only out of the income, but out of the corpus of the estate or fund, unless there be words of restriction sufficiently explicit to cut down the claim of the annuitant to the income only. In the present case the provision for the wife combines the elements and incidents of a life estate in the corpus, with some of the elements of an annuity charged on the income thereof. In the property disposed of by the first clause of the will, the widow is given a life estate therein, by the direction to the trustees to permit her "to possess, use, occupy and enjoy the same, and to receive the rents, issues and profits thereof, for and during her natural life." It is only in the event that the clear annual income from the property thus given shall not amount to the sum of $6000, that the deficiency is required to be made up from that portion of his estate derived through his father's will. In the event contemplated, the trustees are directed to set apart and hold, as they hold the property under the first clause of the will, *a sufficient amount* to make up the deficiency in the income intended for the widow. That income was intended to be at least $6000, which, to use the expression of the testator, he desired to *ensure to her as a minimum income.* As a sufficiency was directed to be set apart for the purpose, if, to make up the deficiency, it required the income of the entire estate derived through the will of his father, the trustees were bound so to appropriate it, in the condition in which the estate has remained since the death of the testator. Looking then to the clear intention of the testator, which must control in the construction of the will, the minimum income for the widow must be secured to her, if the clear income of the estate be sufficient to produce that amount during her life; and to fulfil the intention of the testator, the deficiency of one year must be made up by the application of the surplus of succeeding

years. The testator, doubtless, intended his widow, with her young children, to live in the same state of comfort, and in the style of life which he himself had enjoyed; and in order to enable her thus to maintain herself and family, he definitely fixed the minimum amount of income that she should be entitled to receive from his estate. This amount, in the present condition of the estate, she is entitled to receive; and until it be made good to her, year by year, during her life, the children, who take in remainder, have no interest in the estate. This income to the widow, by the terms of the will, is confined to the income from the estate during her life; as by the terms of the will the estate intact is to be turned over to the children immediately upon her death. With respect, however, to future income, we are not to be understood as deciding that the trustees, after making good the existing deficiencies in the yearly income to Mrs. Tyson, would be required to withhold from the children of the testator the surplus income, if any, over and above the $6000, to supply any mere possible deficiency that might occur in future years in the income payable to Mrs. Tyson.

The case nearest to the present in principle, that has been brought to our attention, is that of *Baker vs. Baker*, 6 *Ho. L. Cas.*, 616. In that case, on the construction of the will, the Court held, that the widow was tenant for life only of the particular fund, as that was required to be held in its integrity during her life, and was given over intact after her death; therefore she could have no claim on the corpus of the fund for the deficiency of the income. There the direction to the trustees was to set apart such sum of money as would, when invested, "realize the clear annual income or sum of 200*l*," with a direction, without any gift of annuity to the widow, "to pay to, or permit and suffer my said wife to receive and take such dividends, interest, or annual income, by two equal half yearly payments, for and during the term of her natural

life, provided she shall so long continue my widow, but not otherwise." And from and after her death or marriage the fund was given over. This was held to be a case of tenancy for life in the widow of the particular fund, the amount of which was to be ascertained by the annual income which it would produce, and was not the case of a gift to the widow of an annuity; and that the gift over was not the case of a gift subject to an annuity, or of a gift to persons subject to take as residuary legatees. And consequently, as the whole residue of the testator's estate, and the income therefrom, did not amount to or produce the 200*l.* a year, it was held that the widow was not entitled to have the deficiency made good out of the corpus of the estate. But the facts of that case did not present the precise question presented in this, as to the right to apply the surplus income of one year to make good the deficiencies of others.

There is another question raised in this case by exception to the auditor's account, and that is as to the proper mode of charging the commission allowed to the trustees. We are clearly of opinion, however, that that question was rightly determined by the auditor and the Court below. It is certainly the general practice to charge the commissions to be allowed to trustees, in cases like the present, upon the entire income that may be in the hands of the trustees for distribution, and then distribute the net balance to the parties entitled, according to the precedence of their rights or claims. If a party is entitled to be paid a certain amount in full, and the fund for distribution is sufficient to make that payment, after deduction of commissions and other proper expenses, he is entitled to receive his claim without reduction or abatement, unless it be under very special circumstances. Upon no other principle could an annuitant or a party entitled to a specific sum as a charge upon the proceeds of property, ever get the measure of his claim in full.

Concurring with the Court below in the order appealed from, we shall affirm the order with costs.

*Order affirmed, and*
*cause remanded.*

(Decided 26th March, 1884.)