CHAS. C. HOMER AND GEO. R. WILLIS, TRUSTEES, *vs.* JOHN W. LANDIS, ADMINISTRATOR.

*Devise and Legacy—Gift of Annuity Payable out of Income.*

A testator gave a life annuity of a certain sum to his sister and directed his trustees "to pay the same to her from the income of my estate in equal quarterly payments as long as she shall live." By a subsequent clause of the will the testator gave to his grandsons the residue of his

estate including the portion "set aside in trust for the benefit of my relations after the trust shall have been accomplished." The annuity from the estate proved to be insufficient to pay the annuity and a bill was filed asking for a sale of the principal for the purpose of paying the same. *Held*, that it was the intention of the testator that the annuity should be paid only from income and the gift is dependent upon the receipt of income.

Appeal from an order of the Circuit Court of Baltimore City (STOCKBRIDGE, J.), overruling a demurrer to the bill of complaint.

The cause was argued before McSHERRY, C. J., FOWLER, PAGE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*Joseph C. France* (with whom were *George R. Willis, Francis T. Homer* and *Samuel K. Smith* on the brief), for the appellants.

If the appellees are entitled to the relief prayed, the collateral relations of the testator will exclude the heirs at law, receive a benefit that the testator never intended and break up the whole scheme of the will. While Mrs. Landis was nearer to the testator than any other of his collateral relations, yet her rights are no greater than theirs. And while it is difficult to attribute to the testator an intention concerning a situation not in his contemplation when he wrote the will, nevertheless it is clear that above all things he meant his estate to remain in its integrity for ultimate distribution to the grandsons. He thought that a part of the income would be sufficient to satisfy the annuities; what he gives to the annuitants is income and income only; and he never contemplated that they should go upon the *corpus* of his estate. It is, of course, conceded that a strict annuity is nothing more than a legacy of a given amount, payable for so many years as the donee shall live; that like other legacies it is entitled to priority over the residuary legatee; that setting aside a particular fund to meet the annual payments does not *in itself* confine the annuitant to the income of that sum, but that, like other legacies, a strict annuity is a charge on the personal and may be made a charge

on the real estate.    At the same time it is equally well estab-
lished that there is no magic in the word annuity ; and that
unless an intention appears to charge the *corpus*, the annuity
can be enforced against the trustees only so far as they have
received rents and profits, even though the amount of the an-
nual payment is specified. *Wilson* v. *Tyson*, 61 Md. 575; *Dehaven*
v. *Sherman*, 131 Ill. 115; *Bates* v. *Barry*, 125 Mass. 83; *Nudd*
v. *Powers*, 136 Mass. 273; *Delaney* v. *Van Aulen*, 84 N. Y.
16.    In England, where strict annuities are more generally
upheld than in this country, the question always is whether
the facts of a particular case bring it within the rule in *Baker*
v. *Baker*, 6 H. L. C. 616; or within that laid down in *Wright*
v. *Callender*, 21 L. J. Ch. 787, and applied by the House of
Lords in *Carmichael* v. *Gee*, 5 App., Cas. 596.

.The testator never in the slightest degree varies from the
position that his entiie estate, including that set apart in trust,
is to go over in its integrity.    The case therefore comes within
the fith rule stated by Mr. Theobald, in the fifth edition of his
*Law of Wills* at p. 451.    "But if there is anything to show that
the *corpus* is looked upon as entire at the annuitant's death ;
if for instance it is given over immediately upon the death of
the annuitant, or the trust comes to an end, or it is then di-
rected to be sold, or if the *corpus* is devised in strict settle-
ment, it is not liable to make good arrears."

*Edgar G. Miller, Jr.*, and *Roland B. Harvey* (with whom
was *Leigh Bonsal* on the brief), for the appellees.

In the case at bar the testator does not give to the trustees
in trust, a particular sum of money, the interest of which
would produce an annual sum of $900.    Such a provision
was made in the case (among others) of *Baker* v. *Baker*, 6 H.
L. Cases, 616, as stated in *Willson* v. *Tyson*, 61 Md. 582.
Nor does the testator devise or bequeath certain real or lease-
hold property for the purpose of having rents and profits of
$900 per year paid over to her.    Such a provision was made
in the case (among others) of *Phillips* v. *Gutteridge*, 3 De G.,
J. & S. 332.

On the contrary the testator gives Mrs. Landis a legacy of a definite sum of money every year. Such was the bequest in the case (among others) of *Carmichael* v. *Gee*, 5 App. Cases, H. L. 588.

What is an annuity of this character? This Court has held that it is regarded as a pecuniary legacy, measured by the number of years the annuitant may live; and the annuitant is entitled to have that sum made good, not only out of the income, but out of the *corpus* of the estate or fund, unless there be words of restriction sufficiently explicit to cut down the claim of the annuitant to the income only. *Willson* v. *Tyson*, 61 Md. 580. As expressed in *Exparte McComb*, 4 Bradf. (N. Y.) 151: "An annuity of $500 per year is nothing more than a legacy of $500 to be paid at the end of one year, $500 at the end of the second year, and so on."

· The fact that an annuity is made payable out of income, as in the case at bar, does not mean that the annuity is payable exclusively out of income, or that the annuitant can look to no other fund for the payment of his annuity. On the contrary, in the absence of a clear intention of the testator, the Courts have uniformly held that the direction to pay out of income indicates merely a means by which the primary object (*i. e.*, the payment of the annuity), is to be secured. It does not denote the main purpose in view, but merely a means to its accomplishment. *Wright* v. *Collender*, 2 De G., M. & G. 655–6; *In re Mason*, L. R., 8 Chan. Div. 414; *Phillips* v. *Gutteridge*, 3 De G., J. & S. 337–8. In *Pierrepont* v· *Edwards*, 25 N. Y. 128, it was said: "The leading principle of the cases is that when the testator bequeaths a sum of money, or, which is the same thing, a life annuity, in such a manner as to show a separate and independent intention that the money shall be paid to the legatee at all events, that intention will not be permitted to be overruled merely by a direction in the will that the money is to be raised in a particular way, or out of a particular fund."

At first sight it may seem strange, where an annuity is given to one person, and gifts are made to residuary legatees, that

the annuitant is entitled to have the *corpus* of the estate used up in payment of the annuity, in case of a deficiency of assets. The result in many cases would be that the *corpus* would be soon entirely consumed, and not only would the residuary legatees get nothing, but even the annuitant himself might soon be deprived of the source of future payments. Yet the Courts have frequently held that the annuitant is entitled to have the *corpus* used for this purpose. Some one must be disappointed if the estate fails to meet expectations, and the annuitant, of course, takes precedence over the residuary legatee. The very nature of a residuary bequest is that the legatee shall only take what is left after the other bequests are satisfied.

The decision in this class of cases, as in other will cases, hold that the intention of the testator is the primary, and perhaps the only, guide for judicial action ; but, nevertheless, certain principles of construction have been laid down, and have become fixed rules of law for the determination of the meaning of wills. While each case stands on its own basis, the Courts constantly refer to other cases for aid in the proper construction of each particular paper. The principles applicable to wills similar to the one at bar have been carefully stated, and the decided cases have been classified, in *Theobald on Wills*, 450–452; 3 *English Ruling Cases*, 211, &c.

Perhaps the rule has been most concisely stated in *Phillips* v. *Gutteridge*, 3 De G., J. & S. 332, 337–338, where the LORD CHANCELLOR said : "The question is merely whether an indefinite charge of an annuity upon rents and profits does not make the annuity a charge upon the *corpus*. I think that it does, unless—as is not the case here—there is something in the will to rebut that conclusion." See also *Birch* v. *Sherratt*, 2 Chan. App. 649.

Where a testator's estate is insufficient for the payment of legacies and annuities, the practice of the Court is to value the annuities, and direct that legacies and annuities abate proportionately. If, after such an order, one of the annuitants dies, his personal representatives receive the whole of the es-

timated value of the annuity, subject to the abatement. 3 *Eng. Ruling Cases*, pgs. 185–186; *Todd* v. *Biely*, 27 Beav. 353, 356–357; *Peyton* v. *Ayres*, 2 Md. Ch. 64; *Wroughton* v. *Colquhoun*, 1 De G. & S. 357.

FOWLER, J., delivered the opinion of the Court.

Edward W. Robinson died in 1893 leaving a will disposing of both real and personal estate. He left surviving him two grandsons, William W. Welch and Edward M. Lara. A number of collateral relations, most of whom were in more or less needy circumstances, also survived him. To several of the latter, among others to his sister, Hannah P. Landis, he gave life annuities. The provision for Mrs. Landis is as follows : "I give and bequeath unto my beloved sister, Hannah P. Landis, a life annuity of nine hundred dollars and direct my executors or my trustee to pay the same to her *from the income of my estate* in equal quarterly payments as long as she shall live."

The provisions for the benefit of his other collateral relations are similar to that we have just quoted,though providing for the payment of different amounts, so that the whole sum directed by the testator to be paid by his trustee in the way of legacies or life annuities amounted annually to the sum of $2,000. He first directed his trustee to set apart and hold a sufficient amount of his estate as will in his best judgment yield beyond all doubt in his mind a net annual income equal to the entire amount of legacies or annuities provided for by the will. The testator declares that having thus made provision in a small way for those of his relations who seemed to him most dependent on him and most in need of his assistance, he desired to dispose of the rest and residue of his worldly estate, by which expression he says, "I mean the portion of my estate (all of my lands, &c., and chattels) thus to be set aside in trust for the benefit of my relations, after the trust shall have been accomplished, as well as the rest or balance of my estate not having thus been set apart, and do, therefore, declare and say as part of this my last will, that the same the rest and residue

of my estate, shall be owned and enjoyed by my two grand-sons, William W. Welch and Edward M. Lara, share and share alike." These devises and bequests for the benefit of his grandsons are made "subject to the purposes of the trust" which he had created for his sister, Mrs. Landis, and his other collateral relations. There are a number of codicils but they are not important nor indeed material as the case is now presented.

It is apparent from the face of the will that the testator supposed his estate was ample after the payment of debts when invested by his trustees, to produce the income necessary to supply a fund for the payment of various annuities which his benevolence prompted him to provide for his needy relations; but during the interval between the execution of the will and his death, the testator became heavily indebted as endorser for the firm of one of his grandsons; so that after his death his estate was found to be involved to such an extent that his debts were not paid in full until the latter part of 1901. The balance remaining after the payment of debts is about $25,000, consisting of real and leasehold, and is, of course, insufficient when invested to produce a sum which will pay the annuities.

The bill in this case is filed by the administrator of Mrs. Landis, who died 4th January, 1901, before the debts of the testator were fully paid and without having received anything on account of her annuity. The prayer of the bill is that a decree may be passed directing a sale of the real and leasehold estate of the testator for the purpose of paying the amount due the plaintiff as administrator of Mrs. Landis on account of her annuity to the time of her death. To this bill the successors of the trustee named in the will, who are made defendants have demurred, and the question presented is whether under the proper construction of the will the provision for Mrs. Landis "is a gift of *income,* dependent on the receipt of income or a technical annuity entitling her to a sale of the *corpus* on deficiency of income."

The contention of the learned counsel for the plaintiff is that the provision made by the testator for Mrs. Landis is a

technical annuity payable at all events—payable primarily out of income, but if no income then the intention of the testator will not be permitted to be "overruled *merely* by a direction in the will that the money is to be raised in a particular way or out of a particular fund; (*Pierrepont* v. *Edwards*, 25 N. Y. 128), and that the annuity here must be regarded as a pecuniary legacy measured by the number of years the annuitant may live, such legacy or annuity being payable out of income if any, but if none or not sufficient, then out of the *corpus*, unless there be words of restriction sufficiently explicit to cut down the claim of the annuitant to the income only." In support of his contention he cites a number of cases, among others that of *Baker* v. *Baker*, 6 H. L. Cases, 616, in which LORD CRANWORTH said: "In all these cases the *real question* is whether that which is given is given as an annuity, or is given as the interest of a fund; whether the language of the testator imports that a sum, at all events, is annually to be paid out of his general estate or only the interest, or a portion of the interest is to be set apart." In the same case LORD BROUGHAM said what we have occasion so often to say "that where the sole question that arises is upon the construction of a will, and where the object is to ascertain the meaning of the words used by the testator, that nothing, generally speaking, can be more unfruitful than a reference to other cases where, instead of the question arising upon a principle of law or a rule of law, the whole question arose upon the meaning of the words employed in the will, and the least difference between the case at bar and the case cited, will make all the difference in the world, and render the application of the cases cited utterly useless."

What then briefly is the intention of the testator as ascertained from the will? It seems to us clear that as in the case of *Baker* v. *Baker, supra,* and *Willson* v. *Tyson,* 61 Md. 575, his clear intention was that what he called his "trust estate" as well as that which was not so set apart, was to go intact, and in its integrity to his grandsons. This is the language he uses: "I give to my sister, Hannah P. Landis, a life annuity

of $900 and direct my trustees to pay the same *from the income* of my estate · \* \* \*" · Not only, however, is there a *mere direction* in the will that the money is to be paid out of income, but there is the further provision that this very trust estate after the death of the annuitant, or life-tenant, is to go over to the testator's grandchildren.  The testator not only devises all his estate to his grandsons including the trust estate, subject of course to the trust, but he uses this significant language: "Owing to the character of the various kinds of property whereof my estate is composed I cannot even suggest to my trustees what property he had best set apart for the purpose of the trust, but having great confidence in his intelligence and integrity, I leave that matter entirely to him. He shall, however, hold the property thus taken, selected and set apart by him (which property for convenience I will call my trust estate, being the same property I have had in my mind when speaking of *the income* of my estate in connection with the duty of my trustees in paying legacies) so long as he shall deem it necessary to enable him to meet the requirements of the trust hereby created and no longer.  It will then come to pass that as the persons whom I have named as beneficiaries under the trust hereby established will, one by one, in death drop off, the money required to meet the demands of those left, will gradually grow less and less, and this being so the extent or quantity of the trust estate for those uses will be from time to time correspondingly diminished, and the part thereof thus not needed will pass over to my grandsons herein named."  How then can it be contended that the annuitants may, if necessary, annihilate the *corpus* of the testator's estate when he not only *merely directs* them to be paid out of the income, but gives the trust estate "in its integrity" to his grandchildren "after the trust shall have been accomplished?"  It seems impossible to suppose that if the testator had it in his mind to dedicate any portion of the *corpus* of the trust estate to the accomplishment of the trust, that he could have failed to use some language which would have expressed that intention.  But instead of so doing we find that his mind is di-

rected to the time when the annuitants shall have passed away, and the *corpus* of the estate shall pass to his grandsons. Not a word do we find in the will which would lead us to the conclusion that the testator contemplated the use of anything but the income for the benefit of his needy relatives, but his relation to and conduct towards his grandsons would rather indicate that his affection for them is the power which controlled the dispositions of his will. If we are correct in declaring this to be the plain intention of the testator, the fact that he was in error as to the amount and value of his estate or as to the extent of his indebtedness, cannot change the nature of the gift to his sister or others for whom he provided. It is to be presumed, of course, that the testator thought his estate ample and, therefore, he not only said in clear and distinct language that the annual payments were to be made out of *the income*, but he naturally anticipated and intended that the income being sufficient for the purpose to which it was devoted, the *corpus* would go intact to his grandchildren. *Theobald on Wills*, 2nd ed., p. 637.

We have thus disposed of the controlling question arising on this appeal, and being of opinion that the demurrer should have been sustained, the decree appealed from will be reversed with costs.

> *Order reversed with costs and remanded for further proceedings.*

(Decided June 19th, 1902.)