# CIRCUIT COURT OF BALTIMORE CITY.

Filed May 3, 1918.

NANNY CABELL, ET AL.,

VS.

THE TRUSTEES OF THE FUNDS OF THE PROTESTANT EPISCOPAL CHURCH IN THE DIOCESE OF VIRGINIA, ET AL.

*Symington & Dinneen* for complainants.

*Marbury, Gosnell & Williams* for defendants.

SOPER, J.—

The will of Mary B. Newton, which is the subject of construction in this case, provides substantially as follows: "After payment of just debts and funeral expenses a legacy of three thousand dollars is bequeathed to Grace Adams Myers." Then follow two annuities:

Item, to Mildred Harris the sum of $20.00 per month during her life, "the first payment to be made within thirty days after my death."

Item, to Lucy F. Richardson, $50.00 per month during her life, "the first payment to be made within thirty days after my death."

All the rest and residue of the estate is devised and bequeathed to the Safe Deposit and Trust Company of Baltimore in trust to hold and invest the same, to collect the income therefrom and to pay over the net amount of the income to the mother of the testatrix, Augusta Roberta Barksdale, "during her life if she shall survive me, and upon her death, or if she shall not survive me, then in trust, first, to divide out and pay over to the trustees of the funds of the Diocese of Virginia absolutely the sum of $37,500.00; second, to divide out and pay over to the Protestant Episcopal Church for the Diocese of Southern Virginia absolutely the sum of $37,500.00; third, to divide out and pay over to the Home For Incurables of Richmond, Va., absolutely the sum of $25,000.00.

And in further trust to hold and invest the residue of the trust estate and to collect the income therefrom and out of the net amount of the income to pay over quarterly certain specified sums per annum aggregating $4,600.00 per annum, to twelve persons named in the will. The paragraphs of the will creating these twelve annuities are substantially like the first of the said paragraphs, which is as follows:

"First to Mrs. Nannie Cabell, of Richmond, Virginia, the sum of $200.00 per annum during her life."

The will further provides that if the income from the said residue of the estate shall exceed the amount required to pay the foregoing annual sums the excess shall be paid semi-annually in equal shares to the two Dioceses, and upon the death of the first surviving beneficiary of the annual payments directed to be made, then in trust to pay over and deliver the whole remaining corpus of the trust estate in equal shares to the two Dioceses.

Mrs. Barksdale, the mother of the testatrix, predeceased her as did also certain of the twelve annuitants referred to. The annual payment of $600 to Mary Blair Jones, one of the twelve annuitants referred to, was assigned to the two Dioceses. Mildred Harris, one of the two annuitants first mentioned in the will, died about nine months after the testatrix.

The amounts therefore payable annually under the will are as follows:

To Lucy F. Richardson...... $600.00
To the survivors of the twelve annuitants hereinbefore mentioned, including Mary Blair Jones.......... 4,300.00

Total ..................$4,900.00

The testatrix died on September 25, 1916, possessed of valuable real estate and personal property valued at approximately $300,000.00 On October 3, 1916, the will was admitted to probate by the Orphans' Court for Baltimore County and on the 28th day of November, 1916, Mary Blair Jones, one of the beneficiaries thereunder, and one of the heirs at law of the testatrix, together with certain other heirs, filed a caveat to the will on several grounds. Shortly afterwards negotiations were entered into between the caveators on the one hand, and the two Dioceses and the Home For Incurables on the other, which finally resulted in an agreement to pay the caveators the sum of $55,000.00 in cash to be contributed as follows: $5,000.00 by the Home and $25,000.00 by each of the two Dioceses, Mary Blair Jones to assign her annuity of $600.00 per annum to the two Dioceses, which agreement was carried out. Thereafter a verdict was entered in the Circuit Court of Baltimore County sustaining the will

of the testatrix and a certificate thereof was duly made to the Orphans' Court on October 17, 1917.

The first and final administration account of the executors was passed by the Orphans' Court on December 27, 1917. It shows the payment of $37,-500.00 to each of the Two Dioceses and $25,000 to the Home For Incurables, which sums were in fact paid in part to the caveators and in part to the legatees mentioned in accordance with the agreement of settlement of the caveat. The executors further paid $700.00 to Lucy F. Richardson, being 14 monthly installments of $50.00 each on account of her annuity and also paid to the administratrix of Mildred Harris $180.00, being nine monthly installments of $20.00 each, due her down to the time of her death.

The trustee has paid to the other annuitants their annuities under the will for one quarter beginning one year from the date of the death of the testatrix, and has also paid to Lucy F. Richardson the monthly installments due her after the distribution of the estate by the executors.

The executors have paid debts and expenses of the estate aggregating $45,-000.00 in addition to the payments above mentioned and have delivered to the trustee securities and cash amounting to $30,084.93.

The income from the personal estate received by the executors amounted to $7,468.83. The real estate of the testatrix consisted of a lot and improvements in Roland Park, Maryland, and certain lot and improvements in Richmond, Virginia. The total net income from the real estate collected by the trustee for the first year after Mrs. Newton's death was $4,690.65.

A special case has been stated under the Forty-seventh General Equity Rule for the construction of the will, wherein Nanny Cabell and the other surviving annuitants are plaintiffs and the two Dioceses and the Safe Deposit and Trust Company of Baltimore, trustee, are defendants. The questions submitted to the court as to the proper construction of the will are as follows: First, concerning the rights of the plaintiffs as annuitants thereunder, that is to say, from what period of time are their annuities payable, from the date of the death of the testatrix or from the expiration of a year after the date of her death? Second, what

property in the hands of the trustee constitutes the residue of the trust estate out of the net income from which the plaintiffs' annuities are payable? Third, what disposition is to be made by the trustee of the net amount of the income in its hands at the end of the two periods of six months each, counting from the date of the death of the testatrix? Fourth, does the income from the personal estate, amounting to $7,468.83 received by the executors or any part thereof, constitute a part of the corpus of the estate, or is the same or any part thereof to be regarded as income, and what disposition thereof should be made by the trustee.

It will be observed that the controversy in the case centers upon the question of the date from which the annuities (other than the Richardson annuity) directed to be paid by the trustee, begins to run. If they begin to run from the death of the testatrix there is now in the hands of the trustee under one view of the case income from the trust property from which the annuities for the year beginning September 25, 1916, may be paid, but if the annuities do not begin to run until September 25, 1917, whatever income for that year is in the hands of the trustee becomes corpus of the estate to be delivered to the two Dioceses as residuary legatees upon the death of the last surviving annuitant.

It is to be noticed at the outset that the assets of the estate were ample to pay all debts, expenses and legacies, leaving a residue which produced an income in the first year after the testatrix's death more than sufficient to pay the annuities for that year claimed by the plaintiffs. The court is therefore not concerned with the situation which arises when a testator overestimates the value of his estate and attempts to provide for the distribution of annual income from the whole or a part of the estate in excess of income actually produced. When this occurs, considerable difficulty ensues and the attempt must be made to ascertain from the will the intention of the maker in regard to a contingency problem not contemplated by him, or failing that, to reach an equitable decision between conflicting interests. In this case, there is no such embarrassment, and it is necessary only to determine the intention from the terms of the will according to the rules of law applicable to the settlement of estates of this character.

Now, strictly speaking, an annuity given by will is nothing more than a pecuniary legacy of a stated amount payable for as many years as the donee may live. Ordinarily it commences from the testator's death and a bequest of the personal estate for life with remainder over generally entitles the life tenant to the income commencing with the death of the testator, certainly as between life tenant and remainderman. Wethered vs. Safe Deposit and Trust Company, 79 Md. 153.

The fact that the property is left to trustees instead of to the life tenants directly make no difference. Abel vs. Abel, 75 Md. 64; Wethered vs. Safe Deposit and Trust Company, supra.

However, if a particular fund is set aside to meet the annual payments and it appears from the will that the testator did not intend to charge the corpus, the annuitant is confined to the income of the fund and the annuity can be enforced against the trustees only so far as they have received rents and profits, even though the amount of the annual payment is specified. Homer vs. Landis, 95 Md. 320.

The counsel for the defendants contend that the payments to be made to the plaintiffs are not annuities in the strict sense payable at all events, and if necessary out of the corpus, but on the contrary, they are payable only from the net income to be derived from a certain trust fund, namely, the residue of the estate and in case this income proved insufficient to meet the payments there can be no resort to the principal. The case of Homer vs. Landis, cited above, arose upon the construction of a will providing certain life annuities payable from the income of the estate and directing the trustee to set aside a portion of the estate sufficient to yield a net annual income equal to the entire amount of the annuities, and further directing that when the trust should have been accomplished the estate should pass to certain grandsons. During the interval between the execution of the will and the death of the testator he became heavily indebted so that after his death the balance of the estate remaining after the payment of debts was insufficient to produce an income equal to the annuities. The court held that the testator did not intend to dedicate

any part of the corpus to the payment of annuities, but intended that it should pass in its integrity to his grantors, and that the annuities must be limited to the net revenue of the estate.

In like manner the defendants here contend that the testatrix has directed the plaintiffs to be paid out of the net income from the income of the estate after the payment of debts and certain legacies, including $100,000.00 in the aggregate to the two Dioceses and the Home For Incurables. The residue of the estate is left in trust with direction to the trustee, first, to divide out and pay over $100,000.00 to the institutions mentioned and, second, to hold and invest the remainder and to collect the income therefrom and out of the net amount of the income to pay the annuities in quarterly installments. It is urged that this trust fund never came into existence until the personal estate was in fact fully administered in December, 1917, after the disposition of the caveat to the will, or if the unusual circumstances of litigation are not to be considered, then the trust fund did not exist until the period had elapsed when but for the litigation the residue of the estate in the hands of the executors could safely and lawfully have been paid over to the trustee. This period must have been at least six months and might have been twelve months if the executors had availed themselves of the provisions of the statute. Bagby's Code, Article 93, Section 109.

The annuitants were not to receive payments until after the trustee should have divided out and paid over from the corpus $100,000 to the religious and charitable institutions. In fact, the latter were paid by the executors from personalty in their hands, but in legal effect they should be considered as paid by the trustee in accordance with the will. But the payment was not made until December, 1917, and in the absence of the caveat, could not have been made before March 25, 1917, six months after the testator's death when at the earliest the executors might have distributed the estate to the trustee. Now, of course, the legal title to the personalty devolved upon the executors and remained in them until the administration was finished and the distribution was made, whilst the title to the real estate passed to the trustee upon the death of the testatrix. Yet even as to the realty the trustee could not safely or legally set aside or sell any part thereof in order to pay the $100,000.00 to the Dioceses and the Home, and could not ascertain or invest the residue until the period had elapsed within which claims against the estate might be presented. Furthermore, in view of the caveat, it was not possible to determine or establish the trust fund until a verdict sustaining the will had been rendered. Therefore, the defendants contend, under no circumstances could the trust fund have been set up before March 25, 1917. And no income therefrom available to pay the annuities could have been earned until after that date. Under the particular circumstances of this case it is contended that there was no trust fund ascertainable and no income before the payment by the executors to the trustee in December, 1917, or certainly not before the verdict sustaining the will in October, 1917, both of which dates are subsequent to the expiration of a year after the testatrix's death.

Any one of the last mentioned dates occurred after the expiration of a year from the death of the testatrix and the defendants concede the payment of income to the annuitants commencing at the end of the first year. They, however, claim that the income for the first year should be added to the corpus in the same manner as the income which accrues upon an annuity between established dates of payment becomes corpus when the annuitant dies between such dates. Kaufman vs. Kaufman, 112 Maryland.

Furthermore, defendants contend that the income from the personalty was assets in the hands of the executors and was properly expended by them in the payment of debts and expenses, as was done in the case of Merryman vs. Long, 49 Md. 540. In that case the will provided that after the payment of debts all of the property should be held in trust for the use of the wife of the testator for life, and after her death for his grandchildren. The estate consisted chiefly of leasehold property. The whole income therefrom for the first year was required for the payment of debts and expenses. The widow claimed that it should have been paid to her, but the court held that she had no vested es-

tate in the property until the administration had been completed, and while she would be entitled to receive income from the testator's death apart from any question of payment of debts, and expenses, yet, as between her and the creditors the latter were entitled that their debts should be paid out of assets in the hands of the executor and she had no right to insist that the corpus should be sold to pay the debts. The court thought that it was equitable to preserve the corpus intact and that no real injury would be inflicted upon the widow who would thereafter receive the income from the entire residue. In like manner the defendants here maintain that the entire income from the personalty for the first year, amounting to $7,468.83, should be applied to debts and expenses of administration and there would be no income available to pay the annuities for the first year.

Now, how are these considerations applicable to the case at bar, and what light do they throw upon the intention of the testatrix? It can not be fairly said that she manifestly intended the plaintiffs to receive no income for the first year. It is true that they were to get nothing during her mother's lifetime, whilst the Richardson and Miller annuities were payable at once, even though her mother should survive. But the testatrix clearly contemplated the possibility of the prior death of her mother, which in fact occurred, and in this event specifically provided for the creation of a trust for the benefit of the plaintiffs. Certainly the testatrix intended that the trust should become effective as soon as in the nature of things it was possible. She had in · mind a generous provision for the Dioceses and the payment of certain sums annually to twelve individual beneficiaries. What reason is there to suppose that she desired to postpone the enjoyment of her gifts beyond the earliest time when it should be possible to effectuate them? By this terms of the will as defined by the decisions cited the annuity should begin to run from her death. The fact that the property was left in trust does not alter the situation. See Wethered vs. Safe Deposit and Trust Company, supra. Even though it be conceded that $100,000.00 was first to be deducted from the corpus and transferred to the Dioceses and the Home, it does not follow that the annuities did not begin

to run until this sum of money was actually paid. There was sufficient corpus to make the payment of $100,-000.00 sufficient income from the residue to pay the annuities notwithstanding the unusual and unforseen expenses resulting from the caveat. The estate being ample for all the objects of her bounty, it is difficult to conclude that one group rather than the other was to be preferred in the scheme of distribution. The primary purpose of the trust, the mother having died, was to preserve the corpus of the residue and to distribute the income therefrom first to the annuitants in the sums mentioned, any excess to be paid to the Dioceses, and finally, upon the death of the last surviving annuitant to deliver the corpus to the Dioceses. The payments of $100,000.00 to be made to the institutions at the outset of the trust was in its essence a legacy or a devise, and the payment of it was doubtless imposed upon the trustee because the testatrix wished her mother, if she should survive, to enjoy the income from the whole residue. As a matter of fact, in the settlement of the estate the payment of this $100,000.00 was made by the executors out of the personal estate in their hands before the residue was delivered to the trustee.

In short, there is nothing in the will to indicate an intention that the ordinary rule of payment of annuities from the death of the testator should not be followed. To hold that the annuities can not be paid for the first year simply because the so-called legacies of $100,000.00 were not paid until after the end of the first year would enrich the Dioceses at the expense of the annuitants. This would frustrate rather than further the intention of the testatrix. It could only be done by attaching undue importance and effect to the fact that the gift to the Dioceses is mentioned first and the gifts to the annuitants second in the will, and altogether ignoring the fact that there is more than enough property to carry out all the provisions in the will. As the payments to both classes were postponed until the administration was completed and the caveat disposed of, the question of interest on deferred payments may properly be considered, but no occasion arises to deprive the annuitants of any portion of the accumulated income when at last it becomes safe to pay it out.

The defendants, however, contend that even if the time of the establishment of the trust fund may not be the period from which the annuities begin to run, yet they can not be paid for the first year because under the will they are payable only out of income of the estate which has been or should be used to meet other demands against the estate entitled to priority. In the first place, it is urged that the income from the personalty, $7,468.83, was expended by the executor in the part payment of debts and expenses amounting to $45,000.00. If this were the only income of the estate it would become important to decide whether the debts and expenses should be paid therefrom in preference to the annuities in the same manner as was decided to be proper under the circumstances of the case of Merryman vs. Long, supra, but the income from the real estate alone is sufficient to pay the plaintiff's claims. What is to be done with this? It is conceded that it is not available to pay the legacies, debts or expenses, as the personalty is more than adequate for that purpose, but it is said that it should be used to pay interest from the testator's death on the sum of $100,000.00 left to the two Dioceses and the Home. Since this amount was to be paid out of the trust fund before the plaintiffs became entitled to any payment whatever, if the latter are to date their payments from the death of the testator, the defendants should receive interest for the period during which they have been deprived of the amounts due them. This argument, however, is based on the assumption that the annuities are income since they are payable out of income. It is true that they are payable out of the income, but they represent principal in the hands of the recipients. They are legacies in the same sense as the large benefactions to the Dioceses. Ordinarily legacies bear interest from the expiration of a year from the death of the testator and if that rule were applied in this case the plaintiffs would be entitled to interest on the aggregate amount of the annuities from September 25, 1917, to the date when the payments shall have been made to them and the defendants, and the Home for Incurables at Richmond, Virginia, would be entitled to interest on their respective legacies from September 25, 1917, to December 19, 1917, when their legacies were paid.

It would seem that the institutions received the sum of $100,000.00 from the executors in full payment of any claims they might have had for this specific amount under the will. The delay in making the payments was occasioned by the caveat proceedings. The payments were made by the executors as promptly as possible under the circumstances and it would seem equitable under these special circumstances to eliminate interest payments, both on the annuities of the plaintiffs and the sum of $100,000.00, payable in part to the defendants.

The defendants further claim that the following items paid the executors should be deducted by the trustees from the income of the real estate for the first year and added to the corpus.

| | |
|---|---|
| The amount paid to Harriett Miller, the administratrix of Mildred Harris, annuitant.. | $180.00 |
| Amount paid to Lucy F. Richardson, annuitant...... | 700.00 |
| 6 months' interest due July 13, 1917, on mortgage on the Roland Park property...... | 287.50 |
| Total ...................$1,167.50 | |

The first two payments were made by the executor in accordance with the terms of the will providing annuities for Mildred Harris, since deceased, and Lucy F. Richardson, the first payment in each case to be made within 30 days after the death of the testatrix. These provisions are conceded to be annuities in the strictest sense and as no particular fund for their payment was designated, they were properly payable out of the assets of the estate as legacies generally are payable. The testatrix did not direct these two annuities to be paid out of the income and no particular trust fund was created to meet the annual payments. Therefore, it was proper for the executors, in order to carry out the wishes of the testatrix, to make the Miller and Richardson payments out of the funds in their hands. The entire residue of the estate has been turned over to the trustee and although the will itself does not specifically provide, it is necessary in order to effect the intention of the testator that the residue of the estate in the hands of the trustee be charged first of all with the monthly payment of $50.00 to Lucy F.

Richardson during her life. This annuity should be paid out of the income collected by the trustee as it is sufficient not only to meet this annuity but also the annuities payable to the plaintiffs.

The interest accruing on the mortgage on the real estate on the Roland Park property, amounting to $287.50, was a debt of the estate, and so properly payable by the executors out of the personalty, principal or income in their hands.

Specifically answering the questions in the case stated: First, the annuities provided by the will to the plaintiffs are payable from the date of the death of the testatrix.

Second, the property in the hands of the Safe Deposit and Trust Company, trustee, constitutes the residue and corpus of the trust estate, except the sum of $4,690.65, being the net income from the real estate for the year following the death of the testatrix, and said residue is charged primarily with the payment of $50.00 per month to Lucy F. Richardson during her life.

Third, the said net income amounting to $4,690.65 is to be paid to the annuitants named to the extent of $3,700.00 and the balance to the two Dioceses.

Fourth, the income from the personal estate amounting to $7,468.83 collected by the executors having been expended by them in the payment of debts and expenses of the estate, it is not necessary to give further consideration to the fourth question in the case stated.