FRANKLIN A. ROWE AND ANOTHER, AS EXECUTORS, ETC., AND ABRAM W. LANSING, AS RESIDUARY LEGATEE AND DEVISEE UNDER THE WILL OF WENDELL LANSING, PLAINTIFFS, *v.* HANNAH M. LANSING AND MARY TUTTLE, DEFENDANTS.

*Legacy of an annual payment — payable from principal in default of sufficient income.*

A testator, having given to his widow the use and income of a house and lot and farm during her natural life, by his will further provided: "I also direct my said executors to pay to my said wife, Hannah M. Lansing, annually, during her natural life, the sum of one hundred dollars; the said sum of one hundred dollars to be paid to my said wife, in each and every year after my decease, so long as she shall live." The will further directed that the provisions of the will for the widow were to be in lieu of dower and other statutory claims. The residue of the testator's estate, upon the death of his wife, was given over to other parties named in the will. The personal property was insufficient to pay the annuity of $100 a year, unless the same should be paid from principal. There was no change in the testator's pecuniary circumstances between the date of the will and his death.

*Held,* that, under such will, the legacy of the $100 payable annually to the widow did not abate, but in default of income that the principal should be applied in the payment thereof.

*Delaney* v. *Van Aulen* (84 N. Y., 16) distinguished.

SUBMISSION of a controversy without action upon an agreed statement of facts under section 1279 of the Code of Civil Procedure.

The facts agreed upon were, that Wendell Lansing died May 15, 1887, at his residence in Keeseville, Essex county, having previously made and published his last will and testament, whereby, after provision for debts and expenses and for a monument not to cost more than $700, he provided as follows:

"I give and devise to my wife Hannah M. Lansing, the use and income of the house and lot I now own and occupy situate on River street in the village of Keeseville, Essex county, N. Y., and also the use and income of my farm, known as the 'Brewer place,' situate in Chesterfield in said county, to have and to hold the same to her during her natural life." He then provided that upon and from the death of his said wife, her mother, Mary Tuttle, should have the use and income of the same house and lot and farm during her natural life. He authorized his executors, in their discretion, to sell the said farm and invest the proceeds, and pay the income from the proceeds to his widow during her life, and upon and from her death to her mother, Mary Tuttle, during her life. "The provisions of this will" for his widow were declared to be in lieu of dower and other statutory claims. He then gave legacies to his children aggregating $4,400, directing them to have preference and priority over any other gift or legacy. He then gave to his widow, Hannah M. Lansing, the use, during her natural life, of the farming implements, tools, team, cattle and stock on his said farm to an amount not to exceed $1,000. Then he made this provision: "Ninth. I also direct my said executors to pay to my said wife, Hannah M. Lansing, annually, during her natural life, the sum of $100, the said sum of $100 to be paid to my said wife in each and every year after my decease so long as she shall live." He then gave all the residue of his estate to his son, Abram W. Lansing, and appointed the plaintiffs his executors. All the legatees and devisees named in the will survived the testator.

The will was duly admitted to probate, and the plaintiffs, as executors, entered upon their duties. Out of his personal estate, consisting of $6,250, they paid testator's debts in full except a mortgage of $1,100 on said farm, and also paid the $4,400 legacies to his children and erected a monument at a cost of $275. They sold the said Chester-

field farm for $2,243, net proceeds, and invested that sum, sold the farming implements etc., for $705.80, net proceeds, and invested that sum and paid the widow $100, being one year's annuity; then, on January 21, 1889, had their accounts judicially settled by the surrogate; and thereupon it was determined that, over and above the two sums invested, namely, $2,243 and $705.80, there remained only twenty-nine dollars and eighty-three cents applicable to raise the annuity of $100 per year unless the sums should be paid from the principal sums invested as aforesaid, or by incumbering the house and lot in Keeseville, worth $600, occupied by the widow under the will. There was no change in the testator's circumstances between the date of the will and his death. The $475 saved in the cost of the monument probably equaled all shrinkage. The question submitted to the court is whether the $100 directed by the ninth clause of the will to be paid the widow annually during her life shall abate or be paid out of the *corpus* of the estate invested, or out of the house and lot, or both.

*F. A. Rowe*, for widow.

*R. L. Hand*, for residuary legatee and devisee.

LANDON, J.:

I incline to the opinion that the testator intended that the payment to his widow of the $100 annually during her life should be made as directed out of his personal estate, the principal to be applied to that purpose if the income should fail. The testator did not say it should be paid out of the income; he pointed out no principal from which to raise it. He suggested no contingency. He declared " the provisions of this will to be in lieu of dower and other statutory claims of the widow." All the provisions of the will in favor of his widow are made upon consideration of her electing to accept them in place of the provision made for her by law.

These provisions are the purchase-price or value which the testator put upon her legal claims. (*Isenhart* v. *Brown*, 1 Edw. Ch., 411; *Cole* v. *Niles*, 3 Hun, 326; *Williamson* v. *Williamson*, 6 Paige, 298; *Flynn* v. *Croniken*, 9 How., 214.) Such a legacy does not abate. (Id.) The payment of this annuity will be at the expense of the residuary estate. That is devised to his son Abram. There is no suggestion that it is to be preferred to the annuity; and if we

compare this residuary devise and bequest with the pecuniary bequests to the testator's five children, of whom Abram was one, we obtain a suggestion beyond what the terms "rest and residue" imply, that the residuary devise and bequest must abate to any extent necessary to protect the others. The testator says the pecuniary legacies to his five children "shall be paid * * * in preference and priority to any other gift or legacy." Thus it is seen the testator contemplated the possibility of some failure in his estimates, and, with that in mind, he guaranteed some of his legacies, then provided for his wife, and bestowed the possible residue.

The case of *Delaney* v. *Van Aulen* (84 N. Y., 16) is cited in opposition to the views above expressed. In that case the annuitant was not the widow; the clear purpose of the will was that the annuity should be paid from rents and income; they were ample at first, but in "the mutations of affairs" they failed to be sufficient. There, as here, it was the question of the testator's intention, and the court held that the will made no other provision to pay the annuity than from rents and income. The condition of the estate at the time of the testator's death repelled the presumption that he had any intention otherwise to provide for it. In *Pierrepont* v. *Edwards* (25 N. Y., 128) the annuitant was the widow; her annuity was expressly charged upon the income, but that, failing payment, was directed out of the *corpus* of the estate.

Respecting the fund from which the annuity must be paid, it is plain, however, that it must be confined to the $705.80 realized from the sale of the farm implements. The testator devises and bequeaths, upon the death of Mrs. Lansing, the use and income of the house and lot and farm to her mother, Mrs. Tuttle, during her life. This is a clear intimation that the *corpus* of the house and lot must not be impaired to pay the annuity, and Mrs. Lansing must be understood to accept the provisions of the will with this restriction.

Judgment is directed in accordance with these views, with costs to the parties out of the fund of personal estate.

LEARNED, P. J., and INGALLS, J., concurred.

Judgment directing annuity to be paid from the *corpus* of avails of personal property, not from real estate.