SPENCER et al. v. SPENCER et al.

(Supreme Court, Appellate Division, Second Department. March 7, 1899.)

1. WILLS—TRUSTS—LEGACY—DOWER.
   A will directed the executors to set aside realty sufficient to yield a certain annual income, and to pay the rents and profits up to this amount to the testator's widow during life, in lieu of dower; balance of the income, if any, to go to the remainder-men. *Held*, that the corpus of the estate was not liable for the widow's legacy.

2. SAME—ACCUMULATIONS.
   The trustees could not retain a surplus of one year to make good deficiencies of subsequent years, since Real Property Laws, § 51, makes void all directions for accumulations of rents, except during minority of legatees.

3. SAME—COMMISSIONS.
   Where trustees for nine successive years rendered their accounts to the beneficiaries without claim for commissions, and paid over the whole income, they cannot recover commissions on the income.

4. SAME.
   A trustee is not entitled to commissions on personalty applied to the improvement of realty, where he may sell the realty, since, if he should sell, he would secure commissions on the whole, including the personalty put into it.

Appeal from judgment on report of referee.

Action by William Augustus Spencer and others, trustees under the will of Lorillard Spencer, deceased, against Sarah Griswold Spencer and another. A judgment was entered on the report of a referee, and defendants appeal. Affirmed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

J. Frederic Kernochan, in pro. per., as administrator of James P. Kernochan.

John E. Parsons, for appellant Sarah Griswold Spencer.

John L. Cadwalader, for respondents Lorillard Spencer and another.

Howard C. Tracy, for plaintiff respondents.

J. Mayhew Wainwright, for respondent guardian ad litem.
Henry H. Man, for respondent Eleanora L. S. Cenci.

CULLEN, J.   This action was brought by the trustees under the will of Lorillard Spencer, deceased, for a construction of certain parts of said will, and for an accounting.   The only questions raised on this appeal are the rights of Sarah G. Spencer, the widow of the testator, under the trust created in her favor, and the claim of J. Frederic Kernochan, as administrator of James P. Kernochan, a deceased trustee under the will, to commissions.   The trust in favor of Mrs. Spencer was created by the following clause of the will:

"Second. If my beloved wife, Sarah Griswold Spencer, survives me, I direct and empower my said executors, forthwith upon my decease, to set apart a certain portion of my real estate, which shall be amply sufficient, in their judgment, to yield at all times a yearly net income of twenty-five thousand ($25,000) dollars in gold, which said portion I hereby give and devise to my said executors, in trust, however, to let, lease, manage, and improve, and receive the rents, issues, and profits thereof, and to pay the net income thereof, up to twenty-five thousand dollars ($25,000) per annum in gold, or its equivalent, to my said beloved wife, during her life, in equal quarterly payments, against her receipt in duplicate, and the balance, if any, of said net income to the persons, share and share alike, per stirpes, and not per capita, who shall during her life be presumptively entitled to take the portion so held in trust, on expiration of said trust, as hereinafter in this section provided.   And I declare that the provision in this section made for my beloved wife is intended to be in lieu and bar of all dower and thirds, and all other claims on her part against my estate."

Under this instruction the executors set apart certain real property of the testator, which they deemed reasonably certain to produce at all times an annual income in excess of $25,000.   The testator died in January, 1888, and the real estate was set aside for the trust in favor of the widow in about November of that year.   During the first five or six years the trust estate produced a net annual income not only sufficient to pay the widow's annuity of $25,000, but to create in addition thereto an annual surplus of about $5,000.   During the years ending May 1, 1896, and May 1, 1897, the net income was insufficient to pay the widow's annuity; the aggregate deficiency during those two years being about $2,000.   At the commencement of the action the trustees had divided all of the surplus income among the parties entitled thereto, except the sum of about $4,000, which they had on hand.   The widow claimed before the referee that the trustees should be directed to retain any surplus of income that they might receive, for the purpose of applying the same to making good any deficiency of income that might thereafter arise; and she also claimed that her annuity should be made good, if necessary, out of the principal or corpus of the trust estate.   Both those claims the referee decided adversely to the widow.

It goes without saying that the provision made to a widow in lieu of dower is to be construed most favorably to her.   Such a provision is not a mere gratuity, nor merely dependent on moral claims for its support.   It is given for a valid consideration,—the release of dower.   In the present case, too, it is apparent that the dominant intention of the testator was that the widow should receive $25,000 in gold

annually. Therefore the court, to carry out the intention of the testator and the rule of law, should construe this provision of the will beneficially to the widow so far as possible. But, while we may resolve every doubtful question or ambiguous expression in favor of the widow, there is a limit beyond which we cannot go. We cannot make a new will for the testator, even if we believe that, had he foreseen the contingency which has arisen, he would have changed his testamentary dispositions; nor can we pervert the meaning of the plain language of his will. There is no ground on which we can hold that the provision in favor of the widow is a demonstrative legacy of $25,000 a year, and therefore the decision in Pierrepont v. Edwards, 25 N. Y. 128, has no application here. The testator has not given his widow $25,000 a year at all. He has merely given her the net rents and profits of a trust estate, up to the sum of $25,000 per annum. The will seems to have been very carefully drawn by some one who knew thoroughly the law of this state. Had the draftsman the case of Pierrepont v. Edwards before him, and his effort been directed especially to take the present will without the rule of that case, we do not see how he could have adopted language better fitted for the purpose, unless he had said, bluntly, "Pierrepont v. Edwards shall not apply to this will." In Delaney v. Van Aulen, 84 N. Y. 16, speaking of the question whether an annuity given out of the rents and profits could be paid out of the corpus of the estate, Judge Folger said:

"Indeed, it may now be said that there is no principle whatever involved in these cases, save to ascertain what is the testator's intention, and to carry that intention into effect."

But it must be remembered that in that case the gift was of an annuity, and the executors were directed to pay the legatee a specific sum per year. In this case, though we, in our previous discussion, have used the term "annuity," as a matter of convenience, there is in fact no annuity at all, but a gift of rents and profits up to a specified sum. This seems so plain to us as to forbid elaboration, and we are of opinion that the decision of the learned referee in this respect was correct.

The determination of the other question, as to the right or duty of the trustees to retain the surplus of good years to guard against a deficiency in the income of bad years, is involved in more doubt. The direction of the will is not to pay the annual rents and profits of each year, up to the sum of $25,000, to the widow, but to pay her the net income, up to $25,000 a year, during her life; payment to be made quarterly. The intent of the testator was that during her life the widow should receive in the aggregate an amount equal to the multiple of $25,000 by the number of years she might live, so far as the rents and profits of the trust estate should produce that sum. In our opinion, the terms of the will itself will justify this interpretation; and, even if the interpretation be doubtful, the doubt should, under the rule already stated, be resolved in favor of the widow. We do not look upon the direction to divide the surplus among the persons presumptively entitled to the corpus of the trust estate on the expiration of the trust as evidencing any intent on the part of the testator to make such persons the special objects of his bounty. The pro-

vision of the will disposes of the surplus in exactly the same manner as the statute would have disposed of it, had there been no such provision in the will.   Its terms are borrowed from the statute, and its insertion was doubtless the mere desire of a careful lawyer to avoid even the appearance of intestacy.   We think it clear that, in case of deficiency in any year, such deficiency should be made good out of the surplus of succeeding years.   Stewart v. Chambers, 2 Sandf. Ch. 392; Cochrane v. Walker, 4 Dem. Sur. 164; In re Chauncey, 119 N. Y. 77, 23 N. E. 448.   The learned counsel for the widow contends that the principle of the cases cited—that the surplus of one year can be applied to the deficiency of a preceding year—logically requires or justifies the retention of such surplus as security against deficiencies that may occur in the future.   If the right to retain the surplus depended solely on the will of the testator, we are not prepared to deny the correctness of this proposition, at least within limits.   But we are here met with the statutory law of this state on the subject of accumulations.   All directions for accumulations of rents and profits of real property are void, except during the minority of an infant, and for his benefit.   Real Property Law, § 51.   In Dodge v. Pond, 23 N. Y. 69, the testator placed the bulk of his estate in trust, and gave legacies payable in the future in such a manner that it was apparent that he anticipated the payment of these legacies out of the income. · It was held that the executors could not retain or accumulate surplus income for the purpose of paying these legacies, but that such surplus every year must be distributed among the persons entitled to it under the statute.   We assume that there is a limit beyond which the doctrine forbidding accumulations cannot be carried.   We do not suppose that, the very day income is· received, it must be paid over to or distributed among the beneficiaries, and that no amount can be retained for any time, however short, with which to pay a charge certain to accrue in the immediate future.   In this city, taxes are payable towards the end of the year, and they always equal a large portion of the rent of real estate.   Any prudent trustee would retain a certain part of the income received during the early portion of the year to meet the charge that was sure to come at its end.   The same is true of repairs.   The cost of a repair which it was reasonably certain would become necessary in a short time might well be apportioned over some period of time, as depreciation of the property, and a fund might be accumulated to defray the cost when it would be incurred.   Some discretion must be left to the trustee in such matters, and his action, fairly taken in good faith, in the retention of rents for the purposes indicated, would not be held to create accumulations against the statute.   But no such case is presented here. The evidence taken by the referee is not before us on this appeal, the appeal having been taken on the judgment roll.   The only question we have before us on this record is the broad one, whether the trustees have the right to retain present surplus against the possibility of future deficiency.   Under the statute, and the authority of the Phelps Case, the trustees could not retain and accumulate the income of the present year to pay a legacy of $25,000 to the widow 10 years hence.   We cannot see that they have any greater right to

retain the surplus to meet a possible deficiency in such a legacy after the application of the income of that year.

The facts relating to the claim of the late Mr. Kernochan for commissions are briefly these: Annually, he, with his associates, the other trustees, rendered to the beneficiaries an account of the incomes of their respective trusts for the year, and paid over to them the whole net income as it appeared by these accounts. The learned referee allowed the estate of Mr. Kernochan one-half commissions on the personalty included in the corpus of the trusts, but denied to him commissions on the annual income received and paid over, except during the portion of the year in which Mr. Kernochan died. He held that the deceased trustee, by failing to retain his commissions, and by paying over the whole income to his cestui que trust, had waived all claims to commissions on that income. The learned counsel for the estate of the deceased trustee contends that this ruling is erroneous. He asserts that the original rule was that trustees could only take their commissions when they were fixed by judicial decree (Wheelwright v. Wheelwright, 2 Redf. Sur. 501); that, though this rule has been relaxed in favor of the trustee, so that where he annually accounts to his cestui que trust for the income of the year, and pays it over, he may take commissions without judicial order, still he has the right to await the settlement of his accounts and the judgment of the court before he makes his claim for commissions. We entirely agree in this proposition, but it does not help this appellant. The difficulty in his case is not that he did not take his commissions each year from the income, but that he paid over the whole income to the beneficiary. He was not put to the alternative of either taking his commissions, or paying their amount to the beneficiary. There was a third course open to him. That was to retain the amount of his commissions in the trust. The income was the sole fund from which the trustee's commissions were payable. He could not, by paying over to the cestui que trust the amount of the commissions in one year, create a charge or lien on the income of the beneficiary in future years. The interest of the beneficiary in the rents and profits was by the express terms of the statute incapable of anticipation or assignment, and neither the acts of the trustees nor of the cestui que trust could avoid this provision. We do not mean to say that this rule is to be carried so far as to exclude the possibility of any unintentional error resulting in an overpayment in one year being corrected in the next. But in this case the trustees have for nine successive years rendered their accounts to the beneficiaries without claim for commissions, and have paid over the whole net income. By this course they have lost the right to commissions. Hancox v. Meeker, 95 N. Y. 528.

A further claim is made by the counsel for the deceased trustee that he is entitled to full commissions on some $60,000 of personalty which was applied to the improvement of the real estate in the trust. He concedes the general rule that a mere change in the investment of the corpus of the trust estate is not a paying out, so as to entitle the trustee to commission on such investment. He contends, however, that a different rule applies here, because the personalty has

been applied to the improvement of the real estate. He argues that, as the real estate will go to the remainder-men under the will, the trustees can get no commissions on the principal or corpus of the estate at the expiration of the trust term, and that, therefore, they must be entitled to such commissions when the personalty was applied to the realty, or forever lose them. We are not willing to concede that at the expiration of the trust term the trustees might not have a lien on the real estate for their commissions on the personalty that had gone into the real estate. Certainly they would be entitled to take such commissions from any other personalty belonging to the corpus of the trust. However that may be, in this case the trustees are empowered to make sale of the realty. If they should do so, at the end of the trust they would receive full commissions on the sum realized on the sale, which would include the amount of any improvements which had been made on the property from the personalty. We think, therefore, that in this case, at least, the trustees were not entitled to this commission.

The judgment appealed from should be affirmed, with costs to all parties to be paid out of the estate. All concur.