### HOUSTON LAND & TRUST CO. et al. v. CAMPBELL.

No. 3480.

Court of Civil Appeals of Texas. El Paso.

April 15, 1937.

Rehearing Denied May 6, 1937.

Robert Ring, of Houston, for appellant.

Campbell, Myer & Myer, of Houston, for appellee.

NEALON, Chief Justice.

This is an action involving the construction of that part of the will of E. P. Hill, deceased, providing for the payment of $300 a month to his widow, Alice A. Hill, brought by plaintiff, Ben Campbell, executor of the estate of Alice A. Hill, deceased, against Houston Land & Trust Company, executor of the estate of E. P. Hill, deceased; Ruth Hill, one of the beneficiaries under said will; city of Houston; W. A. Paddock, May A. Wise, A. A. Bath, W. L. Clayton, Mrs. H. F. Ring, and J. W. Slaughter, trustees, members of the board of public trusts of the Houston Foundation, defendants. The case was tried without a jury and upon an agreed statement of facts.

The court held that it was the purpose and intention of E. P. Hill by his will to create a demonstrative legacy in favor of his surviving wife, Alice A. Hill, of $300 per month, to be paid by his executor and trustee to the said Alice A. Hill each and every month during her natural life, regardless of whether the income from the estate amounted to that much or not. The court further found that the plaintiff should recover from the Houston Land & Trust Company, as executor and trustee of the estate of E. P. Hill, deceased, $6,673.42, together with 6 per cent. interest thereon from January 1, 1933, and judgment was entered in favor of Ben Campbell, executor, against Houston Land & Trust Company, executor and trustee of the estate of E. P. Hill, deceased, for $7,902.44, with 6 per cent. interest thereon from date of judgment until paid.

All of the defendants in open court excepted to said judgment and gave notice of appeal, but the defendant Houston Land & Trust Company, as executor of the estate of E. P. Hill, is the only defendant that undertook to prosecute an appeal to this court.

E. P. Hill died testate on or about the 1st day of June, 1920, and Houston Land & Trust Company qualified as executor of his estate. He left surviving him his divorced wife, Anna K. Hill, and his daughter, Ruth Hill, a child of his marriage to Anna K. Hill, and his widow, Alice A. Hill, who died on or about January 26, 1933, leaving a last will and testament under which Ben Campbell is now acting as independent executor.

Under an agreement entered into at the time of the granting of the divorce between Anna K. Hill and E. P. Hill, and as a result thereof, a trust was established for the benefit of Anna K. Hill and her daughter, Ruth Hill, consisting of $60,000 of securities deposited with Houston Land & Trust Company as trustee to assure the payment to Anna K. Hill of $100 a month as long as she lived and to Ruth Hill of $100 a month as long as she lived.

It was agreed that Alice A. Hill had no separate property of her own at the death of E. P. Hill and that the estate of E. P. Hill owed her a note of about $4,500, which amount the executor and trustee paid her shortly after the will was admitted to probate.

The will involved was in the following language:

"In the name of God, Who watching over us, slumbers not, nor sleeps:

"I, Edward Pinkney Hill, born in Bastrop, Texas, December 27th, 1838, from childhood to manhood in Marshall, Texas, all my business life of 32 years in Houston, Texas, then to Fort Davis, Texas, where my summer home is now, do make this my last will, hereby revoking all Wills and Codicils at any time heretofore made by me, and I give, bequeath and return to the people of Houston in their corporate capacity as the City of Houston and the Houston Foundation as created and organized by and under the ordinance of said city passed March 22, 1915, and for the uses and purposes expressed and defined in said ordinance, all my property, real and personal, that I may own at my death subject to and charged with the payment of the income thereof or part of it as hereinafter expressed and directed. I give and bequeath to my wife Alice Allen Hill my personal effects and the sum of three hundred dollars each month during her life. My daughter Ruth has now one hundred dollars each month, provided by me from a trust fund in the hands of the Houston Land and Trust Company, I give to her two hundred dollars more each month. I constitute and appoint Houston Land and Trust Company executor and trustee of my estate to possess, manage and control the same and to pay from the income thereof the bequests hereinbefore made to my wife and daughter each month during their lives and the remainder of the net income thereof shall pay from month to month to the said Houston Foundation or to the duly authorized and constituted representative thereof. If my daughter Ruth has children living at her death, the income herein assured to her of $300.00 (three hundred dollars) a month shall go to them share and share alike while they live. At the termination of the trusts and charges herein declared and imposed upon my estate the said Houston Land and Trust Company shall transfer and deliver to the said Houston Foundation or its duly constituted Board, representatives or successors all and singular the property real and personal of my estate to have and to hold and manage for the uses and purposes of the City of Houston as defined in the ordinance before referred to. The bequests hereby made shall not be alienated or incumbered in any manner, nor subject to any form of judicial process. I am influenced to this disposition of my estate by the reflection that I went to Houston early in 1866, with nothing. When I had made a few dollars above necessity, I invested in City lots and continued like investments while I lived there, up to 1897, before which time, after a division of my property, there remained to me enough to enable me to retire from business.

"This good fortune came, unearned by me, through increased value of real estate and it seems appropriate that the City of Houston should have such share in that good fortune as I am in a situation to return.

"I will and wish that no other action be had in court in reference to my estate than to probate this will and return an inventory of my estate.

"In witness whereof I sign my name to this will, which is all in my own handwriting, this 21st day of April, 1915.

"[Signed]    E. P. Hill."

Appellee filed a motion to dismiss this appeal, because appellant filed no appeal bond, his contentions being: First, that article 2276 of the Revised Civil Statutes does not apply to independent executors; and, next, that appellant appeals in the capacity of trustee under the will and not in that of executor.

The contention is made that the exemption from giving bond is in favor of bonded executors only, citing the reasoning of Judge Winkler in Sherwood v. Galveston Real-Estate & Loan Co., 1 White & W.Civ.Cas.Ct.App. § 694. No such limitation is contained in the statute. It is provided that executors, administrators, and guardians appointed by courts shall not be required to give bond upon appeal. It is urged that the independent executor was appointed by the will and not by the court; that the court merely ratified the appointment. In that sense, all executors are appointed by wills. The court may not disregard the expressed wish of the testator unless the one nominated in the will is disqualified. R.S. art. 3354. In the sense that an independent executor may not function until the will has been admitted to

probate, he is an appointee of the court. In Buttlar v. Harris, 52 Tex. 74, the Supreme Court held that independent executors were within the statutory exemption. While it is true that at the time that decision was rendered the words "appointed by the courts" were not in the statute, we think their absence does not alter the situation. Certainly that case disposes of the theory that only the bonded executor may appeal without giving security. In Roy v. Whitaker, 92 Tex. 346, 48 S.W. 892, 49 S.W. 367, the Supreme Court treated the word "executors" as including independent executors.

■■ Nor does it appear that appellant has ceased to function as an executor. The closing of the estate will not be presumed from mere lapse of time. Branch v. Hanrick, 70 Tex. 731, 8 S.W. 539; Main v. Brown, 72 Tex. 505, 10 S.W. 571, 13 Am. St.Rep. 823. In Cleveland v. Cleveland et al., 89 Tex. 445, 35 S.W. 145, 147, our Supreme Court, speaking through Judge Brown, used this language: "Under the law an independent executor would continue in discharge of the duties imposed by the will only so long as the nature of the trust required. No provision is made in this instrument for the continuance of the executors in office beyond the time necessary for the administration of the estate in the ordinary mode, and when the estate was fully administered the legatees had a right to demand a distribution. If, however, the intention was to create a trust in the executors, for the benefit of Mrs. Cleveland, during her life, the duration of the executorship would be limited only by the continuance of the trust."

In a situation somewhat analogous to the one under consideration, the Supreme Court of the United States, in Potter v. Couch, 141 U.S. 296, 11 S.Ct. 1005, 1009, 35 L.Ed. 721, said, "There can be no doubt that all the powers conferred, and all the trusts imposed, were annexed to the office of executors, and not to a distinct office of trustees."

The motion to dismiss is overruled.

■■ This brings us to the controlling question in the case. Did the testator intend to make the legacy to Alice A. Hill a charge against the income only, with the result that it would fail or abate in the proportion that the income should prove deficient; or was it intended by the testator that the legacy should be paid in full at all events, the income being designated merely as a convenient mode of payment, or, as the old writers said, "by way of demonstration"? Legacies are said to be of three kinds: Specific, demonstrative, and general. We quote Pomeroy's (3d Ed.) definitions, with which most, if not all, of the writers are in accord: "A specific legacy is a bequest of a specific article of the testator's estate, distinguished from all others of the same kind; as, for example, a particular horse, or piece of plate, or money in a certain purse or chest, a particular stock in the public funds, a particular bond or other instrument for the payment of money." Sec. 1130.

"* * * Demonstrative legacies are bequests of sums of money, or of quantity or amounts having a pecuniary value and measure, not in themselves specific, but made payable primarily out of a particular designated fund or piece of property belonging, or assumed to belong, to the testator. Their effect is peculiar. Although made primarily payable out of a particular fund, these legacies do not fail—are not adeemed—because such fund may not exist as a part of the testator's estate at his death, but they are then payable out of his general assets, like general legacies. On the other hand, if such particular fund is in existence as a part of the testator's estate at his death, they are not liable to abatement in common with general legacies, but are entitled to payment under the circumstances in exactly the same manner as true specific legacies." Sec. 1133.

"The term 'general legacies' comprises all those which are not either specific or demonstrative, as hereinabove defined." Sec. 1132. Page on Wills (2d Ed.) §§ 1230, 1231; Thompson on Wills (2d Ed.) §§ 481, 482, 483.

"The books are full of illustrations showing the distinction between general, demonstrative, and specific devises. But we have been unable to find any general rule that will in all cases distinguish the difference between such devises. To ascertain if a devise is general, specific, or demonstrative, we go to the terms and conditions of the will, to ascertain the intention of the testator in creating the devise." Lake v. Copeland, 82 Tex. 464, 17 S.W. 786, 787.

"The intention of the testator, as shown by the language used in the instrument, must govern, even if it result in what we might consider unjust or absurd conse-

quences. This intention must be ascertained by considering the entire instrument, and the language of a single clause of it will not govern what is the evident intention in the use of that language, when read in connection with the other provisions. Lake v. Copeland, 82 Tex. 464, 17 S.W. 786; McMurry v. Stanley, 69 Tex. 227, 6 S.W. 412; Peet v. Commerce, etc., Ry. Co., 70 Tex. [522] 526, 8 S.W. 203; Faulk v. Dashiell, 62 Tex. 642 [50 Am.Rep. 542]; Vardeman v. Lawson, 17 Tex. [10] 18.": Cleveland v. Cleveland, supra.

▮▮▮ Guided by the foregoing rules of construction, and bearing in mind the fact that, where the meaning is doubtful, courts do not favor specific devises, we proceed to examine the language of the will. Here, too, we must bear in mind that it was agreed testator was regarded as a skillful, successful lawyer. The very first bequest is a gift to the city of Houston of "all my property, real and personal, that I own at my death." So far, therefore, as the corpus of the estate was concerned, this gift was absolute. As far as the testator could by his will do so, he put title in the city of Houston. Then in express words he subjected "the income thereof" to certain payments as thereinafter "expressed and directed." The first named of these payments is the sum of "three hundred dollars per month" to his wife, Alice A. Hill, the executor of whose will is appellee. Then after providing a legacy of $200 per month for his daughter, he appointed Houston Land & Trust Company, appellant herein, "executor of my estate to possess, manage and control the same and to pay from the income thereof the bequests made to my wife and daughter," etc., with the remainder of "the net income to the Houston Foundation," etc., the particular municipal activity to which he wished the city to devote his estate. Then he directed the Houston Land & Trust Company, at the termination of the trusts and charges therein declared, to deliver to the Houston Foundation, etc., "all and singular the property, real and personal, of my estate." Evidently he expected this property to remain intact. He directed the delivery of "all" of it, not of such as may remain on hand after part shall have been disposed of in order to supply deficits in legacies resulting from lessening of income. Then, as if to permit no misunderstanding of his desire to preserve the corpus intact, he proceeded to set forth at length the motives that actuated him—motives of gratitude toward the people and city, because of the opportunity they afforded him to increase his original stake through the growth of the city and the energy and intelligence of its citizens, going so far as to describe his good fortune as "unearned by me."

Strongly indicative of the testator's intention, too, are his bequeathing title directly to the city, and limiting the authority of his executors and trustees to the power of "possession, management and control" and payment of the income during the lives of the two legatees. He gave his executor and trustee no power to sell or encumber the whole or any part of the estate. In what other way could it have supplied deficits resulting from diminished income? He probably believed the income would be sufficient to pay the legacies, as evidenced by his reference to the income thus assured his daughter. While he might not have foreseen the great depression which has afflicted the country, yet he was seventy-eight years old when he wrote the will; he had seen depressions begin and end, and he knew well that during such periods living costs depreciated and money values appreciated, and it by no means follows that he did not fix the legacies in amounts that he believed sufficient to bridge over periods of diminished income, which he might well believe would be followed by years of plenty.

It is clear that without the power to sell or encumber the deficits could not be supplied as they arose. These powers are not conferred by the use of the words "possess, manage and control." Kennedy v. Pearson (Tex.Civ.App.) 109 S.W. 280; Ashby v. Standard Pipe & Supply Co. (Tex.Civ.App.) 56 S.W.(2d) 218.

It is not to be doubted that the testator intended that his estate should be preserved intact. He took great care to evidence this desire by twice emphasizing his wish that the legacies should be paid out of income, and affirmatively and negatively making the corpus unavailing—affirmatively by the direct bequest to the city and by words of restrictive meaning in conferring power upon the executor and trustee; negatively by failing to confer upon appellant any method of realizing upon the corpus.

Appellee's legacy is specific, and the court erred in holding it to be demonstrative.

The holding here made is in harmony with the great weight of authority.

In Einbecker et al. v. Einbecker, 162 Ill. 267, 44 N.E. 426, the testator, after making "certain specific devises, gave the residue of his estate to trustees, to manage the estate and invest all moneys coming to their hands in good securities, and to pay to the widow, out of 'the moneys so arising from the estate,' a certain annuity, in monthly installments, and directed the trustees, on division of the estate among testator's children, to retain in their hands sufficient capital to insure, from the income arising from the same, the prompt payment of the monthly allowance, and further directed that, on the death of the widow, the securities retained should be divided among his [testator's] children," the trustees being given power to sell and convey any and all real estate. When the income of the estate was insufficient to pay the widow's annuity, the Supreme Court of Illinois held that she was not entitled to resort to the corpus of the estate to make up the deficiencies. In a well-considered opinion the court cited, among other cases, the following: Irwin v. Wollpert, 128 Ill. 527, 21 N.E. 501, in which it was held that a direction to pay an annuity out of rents and profits charged only the rentals and profits, unless a contrary intention appeared; De Haven v. Sherman, 131 Ill. 115, 22 N.E. 711, 6 L.R.A. 745, which adheres to the same doctrine; Forbes v. Richardson, 11 Hare, 354, in which the Vice Chancellor said: " 'I do not find any case where a direction for payment out of annual rents and profits has been held to give a right against the corpus;' " Delaney v. Van Aulen, 84 N.Y. 16, in which, after citing a great number of the old English cases, as well as the New York cases, it was held that where the testator devised the residue of her estate, real and personal, to her executors in trust, to receive the rents and profits of the real estate and to invest and keep invested the personal estate, and to apply those rents and profits and the interest from the personal estate to the use of testator's husband, except that they should apply to the use of the plaintiff in that particular suit $500 per annum until he reached twenty-one, and $1,000 per annum thereafter during the life of the husband, and after the death of the husband $2,000 per annum for life, and the property failed to yield enough to keep the estate in good repair, pay taxes, and other incidental expenses and pay plaintiff his annuity, resort could not be had to the corpus.

In Homer v. Landis, 95 Md. 320, 52 A. 494, the Maryland Court of Appeals held that there was a gift of income where a testator bequeathed to his sister a life annuity, and directed his trustee to pay the same from the income of his estate, and further directed his trustee to set apart such property as he saw fit to enable him to meet the requirements of the trust and gave the trust property in its integrity to his grandchildren after accomplishment of the trust.

The New York court held in Spencer et al. v. Spencer et al., 38 App.Div. 403, 56 N.Y.S. 460, that there was a mere charge against net profits and incomes up to the sum of $25,000 per annum, and not a demonstrative legacy, where the executors were directed to set apart a certain portion of the real estate which should in their judgment yield that amount, and pay the net income thereof up to that amount annually to the surviving wife.

Nor, in view of the factual differences, is there any necessary conflict between our holding in this case and the leading authorities cited by appellee. Pierrepont v. Edwards, 25 N.Y. 128, is relied on most strongly. This case was decided in 1862, and has been cited and either followed or distinguished many times. The case was decided by a divided court. The text of the will is not included in the opinion; but it appears that the testator provided that the executor should pay out of the income $8,000 per annum to testator's wife in the event testator should leave a child or children by her; if there were no child or children, then the executors were directed to pay her $7,000 per annum; it was not provided that this latter bequest should be paid out of income. The feature of the will which seemed to be most persuasive with the majority was one that required that if there should be children that upon their attaining their majority the sum of $8,000 per annum should still be reserved for the benefit of the widow. It seems this provision was not limited to the condition that the investments should yield income in this amount, but was positive and unconditional.

Pierrepont v. Edwards was followed recently in the case of Matter of Anderson's Estate, 143 Misc. 250, 256 N.Y.

529, 533. However, the court held that the legacy therein considered was not a mere bounty legacy, but one given in consideration of the widow's relinquishment of dower in the land left by the decedent. In the last-cited case the court said that "in Matter of Haviland [49 Hun, 301, 1 N. Y.S. 904], as in the instant case, the widow accepted the annuity in lieu of dower, and, consequently, the testator owed the annuity as purchase money," and stated that a similar ruling is found in Rowe v. Lansing, 53 Hun, 210, 212, 6 N.Y.S. 777. How far, if at all, Pierrepont v. Edwards may have been affected by the question of dower does not appear.

Neither the cases of Addition v. Smith, 83 Me. 551, 22 A. 470, nor Smith v. Fellows, 131 Mass. 20, contain the emphatic directions found in Judge Hill's will that the amounts of the legacies shall be payable out of the income, nor was the title to the entire estate put immediately (as far as the testator could accomplish this result) into another legatee with instructions that its income should be charged with the legacies, and with further instructions that any excess in net income should be delivered to such favored legatee.

The Supreme Court of Minnesota held in Merriam v. Merriam, 80 Minn. 254, 83 N.W. 162, 169, that a legacy was demonstrative where the testator provided a fund to furnish a certain income to his widow, designating the amount of the income, and providing that securities should be selected to secure that result. In all the cases in which we have found a direction to set aside a portion of the estate to secure the payment of an otherwise unconditional legacy, such provision has been held to create a demonstrative and not a specific legacy—it being held that providing an amount to secure the payment of a legacy does not restrict its payment to the amount so raised. In Merriam v. Merriam, supra, there was a consideration, however, because the wife was required, in order to participate under the will, to convey her inheritance to one of the sons. Even with this situation one of the justices dissented. In the dissenting opinion, several of the decisions relied on by appellee were analyzed, and the dissenting judge expressed the view, which must ever be borne in mind, that "the only office of the courts is to find out what the testator meant by his will, and by no means to make a new will," stating that this was the one principle established by all of the cited cases.

Without further reviewing the authorities, we hold that in this case the legacy is specific, not demonstrative, and that by the term "income" is meant "net income," and, therefore, the executor was justified in paying taxes and other necessary carrying charges out of the income, and making these charges preferable to the legacies in time of payment. The testator clearly indicated his intention of making the legacies payable out of the net income when, after directing the payment of his bequests to his wife and daughter, he instructed the executor and trustees to pay the "remainder of the net income" to the Houston Foundation.

The judgment of the trial court is reversed and judgment is rendered in favor of appellant.

Reversed and rendered.