# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---
## NO. 03-01-00634-CV
---

**Ricki Diann Rosen, as Independent Executrix of the Estate of
Daniel H. Rosen, Deceased, Appellant**

**v.**

**Wells Fargo Bank Texas, N.A., as Trustee of the Rachael Leigh Rosen Trust and the Dorian
Rosen Trust, and as Guardian of the Estates of Rachael Leigh Rosen and
Dorian Rosen; and Eileen Rosen as Custodian of Rachael Leigh Rosen, Appellee**

---
### FROM THE PROBATE COURT NO. 1 OF TRAVIS COUNTY
### NO. 73,960, HONORABLE GUY S. HERMAN, JUDGE PRESIDING
---

## D I S S E N T I N G   O P I N I O N

The linchpin of the majority opinion is that Rosen=s last will & testament (Athe Will@) as applied after Rosen=s death was entirely devoid of a residuary estate from which to pay the estate taxes. To reach this conclusion, the majority must disregard the most basic tenets of Texas will-construction case law. Because I believe otherwise and would affirm the probate court=s decision, I respectfully dissent.

# BACKGROUND

Under Rosen=s will, executed on May 28, 1997, appellant was the primary beneficiary.[1] Article III of the Will left all of Rosen=s personal property, as well as his interests in all employee benefit plans and retirement accounts, to appellant. Articles IV and V placed the remainder of the estate in two trusts: the Marital Trust and the Family Trust. Rosen provided that the income of both trusts was to be used for the benefit of appellant during her lifetime, with the remainder of both trusts to his descendants, *per stirpes*. I will refer to the gifts under Articles III, IV and V of the Will as the Aprobate assets.@ Article VIII set out the administrative provisions. The other provisions of Rosen=s will are not at issue here.

---

[1] Under the Will, some probate assets pass to Rosen=s descendants, *per stirpes*, upon the death of appellant or in the event that appellant does not survive Rosen, and assets from the Family Trust may be used to provide for Athe health, support, maintenance and education@ of the children.

Rosen had substantial non-probate assets,[2] some of which generated estate and inheritance taxes: (1) a $963,000 life insurance policy, payable to appellee Wells Fargo Bank (AWells Fargo@), as trustee for Rosen=s children;[3] and (2) a Uniform Gift to Minors Act account in the amount of $54,542 for the benefit of Rachael Rosen.[4] I will refer to these gifts as the Anon-probate assets.@ The combined taxable value of $1,017,542 from these non-probate assets produced significant estate taxes established at trial in the amount of $132,442.

The parties dispute which assets are liable for the payment of estate taxes: probate or non-probate. Under Texas common law, estate taxes and other expenses were borne by the general estate. This meant that the beneficiaries of the general estateCtypically a surviving spouse and childrenCbore all

---

[2] As part of his divorce settlement, Rosen was initially required to maintain a $1 million life insurance policy. Pursuant to a subsequent agreement, the amount of life insurance Rosen was required to maintain was reduced to $216,000. Rosen obtained a second insurance policy in that amount. Although he was no longer required to do so, Rosen voluntarily maintained the first policy, in addition to the second policy.

[3] Because Rosen maintained an Aincidence of ownership@ in the first insurance policy, it was included in his estate for tax purposes. Although the record is unclear as to the nature of the incidence, it may have been a power of appointment. This would constitute a prohibited power under the Internal Revenue Code, rendering the insurance policy part of Rosen=s gross estate for tax purposes. Such indicia of ownership make an insurance policy part of the taxable probate estate, subject to taxation. *See* 26 U.S.C.A. ' 2036(a)(2) (West 2002). In addition, the parties agree that, because the second policy should be treated as a debt of the estate, it does not produce any taxes and is not at issue here. However, if the Internal Revenue Service were to view this policy as a transfer and not a debt, the parties agree that this policy would also generate transfer taxes.

[4] Because Rosen was a custodian of this Uniform Gift to Minors Act account, *see* Tex. Prop. Code Ann. '' 141.001-.025 (West 1995 & Supp. 2003), it was included as part of his estate for tax purposes. There is also a Uniform Gift to Minors Act account for the benefit of Dorian Rosen, but because Rosen was not the custodian of this account, it is not included in his estate for tax purposes.

expenses, including taxes, even if non-probate transfers to beneficiaries other than the spouse or children produced such taxes. In place of this system, Texas adopted an equitable apportionment statute in 1987. *See* Tex. Prob. Code. Ann. ' 322A (West 2003). This statute provides that beneficiaries of taxable assets, whether probate or non-probate, will bear a *pro rata* portion of all estate taxes charged against the estate. *Id.* ' 322A(b)(1). This equitable apportionment statute will not apply, however, if a decedent Aspecifically directs the manner of apportionment@ in a will or similar instrument. *Id.* ' 322A(b)(2). To this point, it has remained unclear what the effect of such a waiver would be if the fund from which the taxes are to be paid is insufficiently funded. *See Peterson v. Mayse*, 993 S.W.2d 217, 222 (Tex. App.CTyler 1999, no pet.).

For most decedents, the equitable apportionment method as provided in 322A(b)(1) is suitable. However, some testators include alternative provisions for the payment of estate taxes. While such provisions can direct that taxes be paid out of specific assets, a commonly used provision is that all taxes should be paid Aout of the residuary estate without apportionment.@

Article VIII of Rosen=s Will reads:

B.   All estate, inheritance or similar taxes arising in connection with my death with respect to any property included in my gross estate for the purpose of calculating such taxes, whether or not such property passes under my Will, all funeral expenses and all expenses incurred in connection with the administration of my estate *shall be paid out of the residue of my estate without apportionment*; provided, however, if my wife fails to survive me, to the extent the residue of my estate is insufficient for the payment of such taxes and expenses, then any excess, except as otherwise specifically provided in this Section, shall be paid on a pro rate basis from all of the assets included in my gross estate.

4

(Emphasis added).  It is apparent from this provision of the Will that Rosen has provided for the payment of estate taxes under two different circumstances.  If his wife survives him, the estate taxes are to be paid out of the Aresidue of [his] estate *without apportionment*.@  (Emphasis added).  On the other hand, if he survives his wife, and the residue of his estate should be insufficient, Rosen provides for a *pro rata* method of apportionment similar to section 322A of the Texas Probate Code.  Thus, it is obvious that Rosen contemplated two different methods of apportioning estate taxes.

### Rosen=s Last Will and Testament

Both federal and state law provide certain tax credits that, if used properly, can minimize or entirely eliminate estate and inheritance taxes.  The Amarital deduction@ is a common method for transferring assets to a surviving spouse without generating any tax liability.  It consists of a portion of the estate which is allowed to pass tax free to the surviving spouse.  For over twenty years, the tax code has permitted a married decedent to grant *any* property to the surviving spouse, *unlimited in amount*, which remains tax free at least until the surviving spouse=s death.  *See* 26 U.S.C.A. ' 2056(a) (West 2002).

Every individual is also entitled to a Aunified credit@ that allows the transfer of a fixed number of assets free of transfer taxes.  This credit belongs to the estate.  At the time of Rosen=s death, the unified credit permitted tax-free transfers of up to $675,000.  *See* 26 U.S.C.A. ' 2010 (West 2000), *superseded by* 26 U.S.C.A. ' 2010 (West 2001).  All assets that do not fall under the marital deduction or the unified credit and that are not otherwise exempt may be taxed.

In order to avoid taxation of the assets in the marital deduction upon the death of the surviving spouse, it is common to divide the estate into separate parts: (1) a life estate in the assets subject

5

to the marital deduction to the surviving spouse;[5] and (2) a Abypass trust@C in the amount of the unified credit not already used by other transfersC for the benefit of the surviving spouse during his or her lifetime, with the remainder passing to the children.  Upon the death of the surviving spouse, the assets of the bypass trust transfer to any children or other natural heirs free of taxes.

Article III, entitled ASpecific Gifts,@ made specific bequests[6] of Rosen=s personal property, as well as his interests in all employee benefit plans and retirement accounts, to the appellant, Ricki Rosen.

Article IV of Rosen=s Will established the Daniel Hunt Rosen Marital Trust (the AMarital Trust@):

> C.  If my wife survives me, I give to my Trustee, IN TRUST, to be administered as provided in this Article, such an amount of property (including any non-probate assets payable to my testamentary Trustee) as will be equal to the maximum marital deduction . . . diminished by the value for Federal estate tax purposes of all other items in my gross estate which qualify for the marital deduction and which pass or have passed to my wife under other provisions of this Will or otherwise; provided, however, this gift of property . . . *shall be reduced by an amount, if any*, needed to

---

[5]  A life estate for the benefit of the surviving spouse is considered exempt, for tax purposes, as part of the marital deduction.  26 U.S.C.A. ' 2056(b) (West 2002).

[6]  A bequest is specific if: (1) it is described with such particularity that it can be distinguished from all of the testator=s other property; and (2) the testator intended for the beneficiary to receive that particular item, rather than cash or other property from his general estate.  *Hurt v. Smith*, 744 S.W.2d 1, 4 (Tex. 1987).

increase my taxable estate as determined for Federal estate tax purposes to the largest amount which, after taking into account all other deductions allowed to my estate for Federal tax purposes and all allowable credits, will result in the least amount of Federal estate tax being imposed on the estate.

(Emphasis added). The Marital Trust represents the marital deduction and creates a life estate for appellant=s benefit in all of Rosen=s remaining money and real property. Because the marital deduction was unlimited at the time of Rosen=s death, *see* 26 U.S.C.A. ' 2056, gifting to the Marital Trust Asuch an amount of property . . . as will be equal to the maximum marital deduction@ has the effect of placing *all* of Rosen=s remaining property C after the specific bequests have been made C into the Marital Trust. However, this amount shall be reduced by an amount, *if any*, needed to take advantage of Aallowable credits@ (the Apotential tax credit reduction amount@).

Article V of Rosen=s Will, entitled AFamily Trust,@ establishes the Daniel Hunt Rosen Family Trust (the AFamily Trust@):

If my wife survives me, I give *all of the residue* of my estate to my Trustee, IN TRUST, to be administered as provided in this Article.

(Emphasis added). The Family Trust was meant to be Rosen=s bypass trust. Because of the all-encompassing nature of the Marital Trust, the only possible source of funding for the Family Trust would be the monetary amount, *if any*, by which the Marital Trust would be reduced to take advantage of allowable tax credits. The allowable tax credits at issue are limited to Rosen=s unified credit, in the amount of $675,000.

7

*The Controversy*

Rosen=s Will first makes specific bequests in Article III. Next, the gifting to the Marital Trust of Asuch an amount of property . . . as will be equal to the maximum marital deduction@ has the effect of placing *all* of Rosen=s remaining propertyCafter the specific bequests have been madeCinto the Marital Trust. This amount shall be reduced, however, by an amount, *if any*, needed to take advantage of Aallowable credits@ (the Apotential tax credit reduction amount@). Finally, the Family Trust is funded with Athe residue of [Rosen=s] estate.@ Due to the unlimited marital deduction, *all* of Rosen=s property, except for the potential tax credit reduction amount and specific bequests, was granted to the Marital Trust. This meant that the *only* possible source of funding for the Family Trust was the potential tax credit reduction amount.

This potential tax credit reduction amount was meant to account for Rosen=s unified credit. However, the combined taxable value of the two non-probate assets, $1,017,542, greatly exceeded Rosen=s unified credit of $675,000. Once the non-probate assets absorbed the entire unified credit, there were no potential tax credits left which would reduce the Marital Trust. Because the Marital Trust was reduced by zero, there were no assets left to fund the Family Trust.

On June 20, 2001, appellant, individually, as Independent Executrix of Rosen=s estate, and as Trustee of the Marital Trust and Family Trust, sought a declaratory judgment as to which property in Rosen=s estate would bear the burden of paying federal estate tax and state inheritance tax. Appellant argues that, because Rosen stated the Family Trust would contain Athe residue of my estate,@ his direction to pay estate taxes Aout of the residue of my estate without apportionment@ meant that taxes should be paid out

8

of the Family Trust *alone*. Because the Family Trust remained unfunded, appellant argues that the Will fails to Aspecifically direct the manner of apportionment,@ required by section 322A(b)(1) of the probate code, and therefore the default Texas apportionment statute must apply regardless of Rosen=s express waiver.[7] Under section 322A(b)(1), the estate taxes would be borne by the beneficiaries of the assets that gave rise to the taxes. The trusts established for the benefit of Rosen=s children, represented by Wells Fargo and Eileen Rosen, respond that requiring the non-probate trusts to pay the estate taxes would be contrary to Rosen=s intent to avoid apportionment under section 322A.

The probate court ruled that appellant, as Independent Executrix, must pay all taxes out of the probate assets and that the non-probate assets are not liable for the payment of any taxes.

### The Contentions of the Parties

---

[7] Both the parties and the majority cite numerous out-of-state cases relevant to the issue of whether section 322A of the Texas Probate Code should apply in this case. All of these cases are clearly distinguishable. Both I and the majority have been unable to find a single case, like this one, where the specific bequests and trusts all favored a single beneficiary.

Furthermore, appellant argues, in effect, that due to the taxable nature of the non-probate assets, she has been denied an additional amount of property that would have been available to her through the Family Trust. Her argument overlooks the fact that the unified credit is not hers, but rather benefits Rosen=s estate.

In this appeal, appellant raises two arguments: (1) because the estate taxes were to be paid out of a specified probate asset, the Family Trust, which is unfunded, section 322A should control the apportionment of estate taxes; and (2) the clauses in Rosen=s will regarding maximization of the marital deduction and the minimization of gross estate taxes mandate equitable apportionment in order to fulfill the testator=s intent.[8]

Wells Fargo and Eileen Rosen join issue on whether section 322A is applicable, because Rosen specifically directed that estate taxes be paid Awithout apportionment.@ They urge that the non-probate assets should not be charged with any portion of the estate and inheritance taxes. However, I believe this case can be resolved without resorting to statutory construction based upon a plain reading of the testator=s intent as manifested in the plain language of the Will. Notwithstanding appellant=s contentions regarding the application of section 322A in situations where a testator has designated a specific fund to bear the tax burden and that fund remains completely unfunded, I do not reach that issue. Under the plain language of the Will as applied to Rosen=s estate at the time of his death, I conclude that the Marital Trust was meant to bear the estate tax burden.[9]

---

[8] Appellant=s argument for equitable apportionment fails to account for the fact that appellant was the primary beneficiary under *both* the Marital Trust and Family Trust. Although the children would inherit the remainder of the Marital Trust, and income from the Family Trust could be used to provide for their education, the income from both trusts was primarily for the benefit of appellant during her lifetime.

[9] One of my concerns with the majority opinion is that it fails to thoroughly analyze the question of whether the equitable apportionment statute, once waived, can be resurrected solely on the ground that the fund from which the will directs that taxes be paid is insufficient to meet the estate=s entire tax obligation. While the majority opinion tacitly concedes that, under Texas law, Rosen=s will expressly waives the statute=s application, *see Peterson v. Mayse*, 993 S.W.2d 217, 222 (Tex. App.CTyler 1999, no pet.); *Estate of Miller v. Commissioner*, 76 T.C.M. (CCH) 892 (1998), it simply assumes that an

insufficiency of funds automatically triggers the statute=s reinstatement despite a valid express waiver to the contrary.  This determination is not only a question of first impression, but a complex legal issue requiring, in my opinion, more analysis than it is given by the majority.

**DISCUSSION**

In construing a will, the court=s focus is on the testator=s intent. *San Antonio Area Found. v. Lang*, 35 S.W.3d 636, 639 (Tex. 2000); *Huffman v. Huffman*, 339 S.W.2d 885, 888 (Tex. 1960). This intent must be ascertained from the language found within the four corners of the will. *Lang*, 35 S.W.3d at 639; *Shriner=s Hosp. v. Stahl*, 610 S.W.2d 147, 151 (Tex. 1980). The court should focus not on what the testator intended to write, but the meaning of the words actually used. *Stahl*, 610 S.W.2d at 151; *Rekdahl v. Long*, 417 S.W.2d 387, 389 (Tex. 1967); *Kirk v. Beard*, 345 S.W.2d 267, 273 (Tex. 1961). In this light, courts must not redraft wills to vary or add provisions Aunder the guise of construction of the language of the will@ to reach a presumed intent. *Stahl*, 610 S.W.2d at 151; *Welch v. Straach*, 531 S.W.2d 319, 322 (Tex. 1975); *Huffman*, 339 S.W.2d at 888. It is therefore our duty to determine the effect of Rosen=s will based on the meaning of the words Rosen actually used; we must not speculate as to the words Rosen might have used with the benefit of hindsight and thereby redraft the will. *Stahl*, 610 S.W.2d at 151; *Huffman*, 339 S.W.2d at 889. Finally, a will speaks at the time of the testator=s death, and it is the estate he then possessed that passes according to the terms of his will. *Stahl*, 610 S.W.2d at 150. We must therefore determine the correct *application* of Rosen=s Will based on the facts as they *actually existed* at the time of Rosen=s death.

Appellant=s argument is premised on the assumption that the Marital Trust is a specific bequest and the Family Trust is a residuary bequest. Texas law has long recognized that all bequests fall into four functional categories: specific, demonstrative, general, and residuary. *Hurt v. Smith*, 744 S.W.2d 1, 4 (Tex. 1987). A legacy is classified as specific if: (1) it is described with such particularity so that it can

be distinguished from all of the testator=s other property; and (2) the testator intended for the beneficiary to receive that particular item, rather than cash or other property from his general estate. *Id.*; *see also Houston Land Trust Co. v. Campbell*, 105 S.W.2d 430, 433 (Tex. Civ. App.CEl Paso 1937, writ ref=d). A legacy is demonstrative if: (1) it is a bequest of sums of money, or of quantity or amounts having a pecuniary value and measure, not in themselves specific; and (2) the testator intended such bequests to be charged primarily to a particular fund or piece of property. *Hurt*, 744 S.W.2d at 4; *Campbell*, 105 S.W.2d at 433. A legacy is a general bequest if: (1) it bequeaths a designated quantity or value of property or money; and (2) the testator intended for it to be satisfied out of his general assets rather than disposing of, or being charged upon, any specific fund or property. *Hurt*, 744 S.W.2d at 4. Finally, a legacy should be classified as a residuary bequest if: (1) the testator intended for the gift to bequeath everything left in the estate, after all debts and legal charges have been paid, and after all specific, demonstrative and general gifts have been satisfied. *Id.*; *see Stahl*, 610 S.W.2d at152.

Appellant argues that because the Marital Trust is a specific bequest, the Family Trust therefore constitutes the Aresidue@ of the estate. According to appellant=s argument, because Rosen directed that estate taxes be paid Aout of the residue of my estate,@his direction must fail because the Family Trust is unfunded. Therefore, appellant argues that the apportionment scheme of section 322A must then apply.

I disagree with appellant=s characterization of the Marital and Family Trusts. When classifying bequests in a will, we must consider the testator=s intent by looking at the application of the provisions of the will rather than by reaching an arbitrary determination based upon a ritualistic classification.

13

*Hurt*, 744 S.W.2d at 4; *Jacobs v. Sellers*, 798 S.W.2d 24, 27 (Tex. App.—Beaumont 1990, writ denied). Rosen's specific bequests were contained in Article III of the Will. Although appellant contends that the Marital Trust constitutes an additional specific bequest, the Marital Trust fails to meet either part of the definition of a specific bequest. First, specific bequests are described with such particularity so as to distinguish them from all of the testator's other property. The effect of the unlimited marital deduction, however, is to bequeath *all* of Rosen's other property—except for the potential tax credit reduction amount—to the Marital Trust. Bequeathing "such an [unlimited] amount of property" cannot be characterized as describing with such particularity as to distinguish the gift from all of the testator's other property. *See Hurt*, 744 S.W.2d at 4; *Campbell*, 105 S.W.2d at 433. The Marital Trust, in fact, *is* all of Rosen's other property. Second, with a specific bequest, the testator intends the beneficiary to receive a particular item, rather than cash or other property from his general estate. *Hurt*, 744 S.W.2d at 4; *Campbell*, 105 S.W.2d at 433. Here, again, all particular items have been disposed of in Article III, and Rosen leaves *all* remaining cash and other property—except for the potential tax credit reduction amount—to the Marital Trust. By definition, the Marital Trust *is not* a specific bequest.

I next address how the Marital Trust *should* be characterized. The Marital Trust in fact constitutes the residue of Rosen's estate. Because the marital deduction was unlimited at the time of Rosen's death, *see* 26 U.S.C.A. § 2056, gifting to the Marital Trust "such an amount of property . . . as will be equal to the maximum marital deduction" has the effect of placing *all* of Rosen's remaining property—after the specific bequests have been made—into the Marital Trust. This amount shall be reduced, however, by an amount, *if any*, needed to take advantage of the potential tax credit reduction

14

amount. Because the Marital Trust was reduced by *zero*, it encompasses *all* of Rosen=s property after the specific bequests have been made. In other words, the Marital Trust comprises Aeverything left in the estate, after all debts and legal charges have been paid, and after all specific, demonstrative and general gifts have been satisfied@; this *is* the definition of a residuary estate. *Hurt*, 744 S.W.2d at 4. Because the Marital Trust satisfies the effect, as well as the language, of a residuary bequest, the residue of Rosen=s estate is within the Marital Trust.

My characterization of the Marital Trust is bolstered by the basic purpose of a residuary estate, to prevent partial intestacy. *Wright v. Greenberg*, 2 S.W.3d 666, 673 (Tex. App.CHouston [14th Dist.] 1999, no pet.). The Marital Trust is constructed so as to maximize the marital deduction, which is unlimited. Because the Family Trust never came into being, the Marital Trust contains *all* of Rosen=s property not otherwise devised. In effect, this includes any property Rosen may not have provided for in his will. The Marital Trust then meets not only the *definition*, but also the *purpose*, of a residuary estate. Due to the all-encompassing nature of the Marital Trust, I conclude that it contains Athe residue of [Rosen=s] estate.@

My conclusion stands even though Rosen did not use the word Aresidue@ in establishing the Marital Trust. Texas courts have determined residuary estates to exist even where the word Aresidue@ is not used. *See, e.g.*, *Sewell v. Sewell,* 266 S.W.2d 924, 926 (Tex. Civ. App.CTexarkana 1954, writ ref=d n.r.e.) (general gift of Arest of all the property,@ following several specific gifts, created residuary clause); *Wolf v. Hartmangruber*, 162 S.W.2d 112, 116 (Tex. Civ. App.CFort Worth 1942, no writ) (phrase Aall my property shall be equally divided among all of my children@ was sufficient to constitute residuary clause).

15

Absent the phrase Athis [Marital Trust] . . . shall be reduced by an amount, if any, needed to [take advantage of] all allowable [tax] credits,@ there would be no question that the Marital Trust satisfies the definition of a residuary estate. This phrase, combined with Rosen=s use of the word Aresidue@ in constructing the Family Trust, raises the question of whether the Family Trust constitutes the residuary estate.

Rosen uses the phrase Aall of the residue of my estate@ in the granting clause creating the Family Trust. However, this is not by itself dispositive. First, creation of the Family Trust is contingent upon the existence of available credits by which the Marital Trust would be reduced. A residuary clause may be a contingent bequest; if the contingency fails, the bequest fails as well. *See, e.g.*, *Betts v. Haggard*, 495 S.W.2d 602, 606 (Tex. Civ. App.CTyler 1973, writ ref=d n.r.e.) (paragraph Fourth was contingent residuary clause to be effective only if the bequests made in paragraphs Second or Third became ineffective); *Fain v. Fain*, 335 S.W.2d 663, 665 (Tex. Civ. App.CFort Worth 1960, writ ref=d) (residuary clause was conditioned on wife predeceasing testator, and failure of wife to predecease testator meant residuary clause failed, even though it had effect of testator dying intestate as to some property). The Family Trust was conditioned on the existence of a potential tax credit reduction amount, and this condition never occurred. Consequently, the Family Trust never came into existence. Therefore, because the Family Trust was never created, language used by the testator in that section of the Will is a nullity.

Indeed, the words Aif any@ in the Areduced by@ clause indicate Rosen=s awareness of the possibility that there might in fact be no available credits by which to reduce the Marital Trust and fund the

Family Trust.  Because the non-probate assets exceeded the unified credit, leaving no allowable credits and therefore reducing the Marital Trust by zero, this is exactly the situation that confronts this Court.

To hold under Rosen=s will that there is no residuary estate, as the majority does, requires us to completely disregard the all-encompassing functional nature of the Marital Trust, as well as the purpose and definition of a residuary estate according to Texas case law.  Because the Marital Trust contains the residue of Rosen=s estate, I would affirm the probate court=s ruling that the non-probate assets are not liable for any portion of the estate and inheritance taxes.  Because the majority concludes otherwise, I respectfully dissent.

_____

Mack Kidd, Justice

Before Justices Kidd, Yeakel and Patterson

Filed:   July 30, 2003

17